**Vernon L. ADAMS, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**Vernon L. ADAMS, alias Dimples, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 1972–1974.**

Municipal Court of Appeals for the District of Columbia.

Argued July 8, 1957.

Decided Sept. 16, 1957.

1. D.C.Mun.App., 52 A.2d 631, 632.

Sidney A. Cohen, Washington, D. C., with whom Thomas J. Ahern, Sr., and Harry J. Ahern, Washington, D. C., were on the brief, for appellant.

Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, Hubert B. Pair and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., for appellee in Nos. 1972 and 1973.

E. Tillman Stirling, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., Lewis Carroll and Fred

L. McIntyre, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee in No. 1974.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was charged by the District of Columbia in separate informations with dispensing certain drugs on two different occasions although he was not a licensed pharmacist, in violation of Code 1951, § 2–601. He was also prosecuted by the United States on a two-count information for the same acts as a violation of 21 U.S.C.A. §§ 331(k), 352(d), and 353(b) (1) (B). The cases were consolidated for trial, a jury found him guilty of all charges, and these appeals followed. The only errors assigned relate to the reception of certain evidence and the sufficiency of the government's evidence to establish continuous custody of the drugs up to the time of trial. It is conceded that the same evidence was necessary to prove all the charges and thus our decision on these allegations of error will be dispositive of all appeals.

The testimony of a police officer on behalf of the government indicated that appellant had delivered the drugs to him while he was working as an undercover agent. During his cross-examination by defense counsel, the following colloquy occurred:

"Q. I will ask you this, sir: did you search this man's record to find out if he had a record for narcotics: Adams? A. At what time?

"Q. Any time during your investigation or tour of duty in this case? A. Yes, sir.

"Q. Did you ever find that he had any narcotic record: Adams? A. Not on narcotics, sir."

The prosecutor contended that these questions in effect placed appellant's character in issue and that he was therefore entitled to introduce into evidence the records of appellant's convictions for certain other offenses. Over objection the trial court upheld this position. Another police officer then testified on direct examination that he had searched appellant's record and ascertained that he had been convicted of the unauthorized use of an automobile, of carrying a deadly weapon, and of robbery. The defense claimed that the alleged conviction for robbery was actually one for assault. This contention was later shown to be accurate, and the trial judge at the close of the government's case gave a corrective instruction to the jury. Subsequently appellant took the stand and acknowledged the convictions, and the trial judge instructed the jury that they were admitted only for the purpose of impeaching his credibility.

■ Appellant complains that it was improper for the prosecutor to adduce testimony of his prior convictions as evidence of bad character since they were unrelated to the specific character trait involved, namely, illegal dealing in narcotics or drugs. Our consideration of this contention requires a brief review of the settled rules of law applicable to character evidence. Character is never an issue in a criminal case unless the defendant chooses to make it one. Only after the defendant has introduced evidence of his good character may the government in rebuttal offer evidence of bad character.[1] Such evidence is confined to that of general reputation. Consequently, specific incidents in the life of the accused may not be shown, but only his reputation in the community. In other words, a witness may state either on direct or on cross-examination only what he has heard, not what he knows, about the defendant.[2] To be admissible the testimony

---

1. Josey v. United States, 1943, 77 U.S. App.D.C. 321, 135 F.2d 809.

2. Stewart v. United States, 1939, 70 App. D.C. 101, 104 F.2d 234.

must relate to the specific trait of character involved in the offense charged,[3] unless the defendant seeks to establish a general reputation for honesty and truthfulness.[4] Finally, while character ordinarily is made an issue through the testimony of witnesses for the defendant, it is possible to raise the issue through cross-examination of the government's witnesses and the prosecutor has the right to refute the evidence thus presented.[5]

Tested by these principles, we do not believe that the question put to the police officer on cross-examination by defense counsel was the proper way to elicit character evidence because it requested knowledge of specific incidents rather than reputation. Since the question could not be justified on any other basis, it should have been stricken as irrelevant. Once admitted, however, the effect of the testimony was to place character in issue, since it tended to establish a good character in appellant, and consequently the government had the right to rebut it. Appellant apparently is conceding that his character was in issue, but argues that it was an issue only to the extent of the character trait involved. We agree. Defense counsel's question was concerned only with narcotics violations and while the drugs involved here were not narcotics,[6] we believe the offenses are similar enough so as to warrant a limitation on the evidence which the government could introduce in rebuttal. Clearly, then, it was error to permit the prosecution to show convictions for unauthorized use of an automobile, carrying a deadly weapon, and assault.

We are not persuaded, however, that the admission of appellant's prior convictions during the government's case constituted reversible error, for appellant subsequently took the stand and his record was again revealed and was admissible for the purpose of affecting his credibility. Appellant says that the initial error deprived him of any choice and forced him to testify. Under some circumstances [7] this argument might have validity, but here his counsel indicated early in the trial before the admission of his record that he intended to testify. The United States Court of Appeals for the District of Columbia has ruled in comparable situations that the defendant's rights were not prejudiced,[8] and a careful study of the stenographic transcript convinces us that that was the case here.

Appellant also assigns as error the action of the trial judge in not immediately correcting the mistaken testimony about his conviction for robbery. Since the crime was only one of several and the jury was eventually told the true nature of the offense, we do not think this constituted substantial prejudice, nor can we agree that the lapse of time was of any significance.

Finally, appellant contends that the government's evidence was insufficient to establish continuous custody of some of the drugs involved. There was testimony that an inspector for the Food and Drug Administration received the evidence in Washington from the police officer, sealed it, and gave it to another inspector to deliver to a storekeeper for the Food and Drug Administration located in Baltimore. At trial, the first inspector and the storekeeper testified, but not the inspector who transmitted the drugs. We do not regard this omission as serious. As the Ninth Circuit stated in an identical situation:

3. Morris v. District of Columbia, 1941, 75 U.S.App.D.C. 82, 124 F.2d 284.

4. Michelson v. United States, 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

5. See, e. g., Logan v. State, 1952, 95 Okl. Cr. 76, 239 P.2d 1044; Brethern v. State, 1941, 191 Miss. 151, 2 So.2d 798; 1 Underhill's Criminal Evidence § 192 (5th ed. 1956).

6. They were amphetamine sulfate and secobarbital sodium.

7. Cf. United States v. Modern Reed & Rattan Co., 2 Cir., 159 F.2d 656, certiorari denied, 1947, 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845.

8. Lucas v. United States, 1939, 70 App. D.C. 92, 104 F.2d 225; Skiskowski v. United States, 1946, 81 U.S.App.D.C. 274, 158 F.2d 177.

"Carried to its logical conclusion, this 'chain of possession' theory would require the Government to prove affirmatively that *each* one of the many mail clerks, Administration clerks and experts, doctors, nurses, express company employees, 'and others,' handled and cared for the goods so that changes could not occur while the drugs were in their custody. It must also be shown that the products 'were not tampered with,' say the appellants.

"Such a rigorous exaction regarding proof is supported neither by reason nor by authority. If the Government were obliged to establish the absence of 'tampering' by every one who had any contact whatsoever with the drugs, the Act would be incapable of enforcement." [9]

We conclude that the inspector's connection with the drugs was only as a courier and that his testimony was not essential.

Affirmed.

9. Pasadena Research Laboratories v. United States, 9 Cir., 169 F.2d 375, 381 certiorari denied, 1948, 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401.