**Rudolph HACK, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**Jimmie V. OWENS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 80–1383, 80–1391.**

District of Columbia Court of Appeals.

Argued Dec. 16, 1981.

Decided May 6, 1982.

Bruce E. Coolidge, Washington, D. C., appointed by this court, for appellant Hack.

Vincent A. Jankoski, Washington, D. C., appointed by this court, for appellant Owens.

Richard A. Stanley, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Mary A. McLaughlin, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KERN, NEBEKER and BELSON, Associate Judges.

KERN, Associate Judge:

Following a jury trial, appellants were found guilty of two counts of possession of dangerous drugs (phenmetrazine and phencyclidine), D.C.Code 1973, § 33–702(a)(4), and two counts of possession of narcotics (heroin and marijuana), D.C.Code 1973, § 33–402. Each appellant contends that his conviction should be reversed on several grounds. We reverse appellant Hack's conviction for possession of phenmetrazine and heroin, and we affirm as to the other two counts against him and as to all counts against appellant Owens.

I

The charges against appellants Rudolph Hack, Jr., and Jimmie V. Owens arose from the series of events surrounding their arrests on the afternoon of May 6, 1980. Police officer Harold Smith, on duty in Southeast Washington with Officer Randolph Batty, observed appellant Owens standing by a car in a parking lot and conversing with its occupant. Because it appeared to Officer Smith that Owens may have been involved in a drug transaction, the two officers followed Owens in their unmarked car as he walked down the street.

Near the corner of two streets, Owens sat down on a low wall and placed a small yellow plastic bag in the grass behind him. Shortly after this, appellant Hack, who had not yet been noticed by the officers, walked behind Owens, picked up the bag, and began to examine it as he continued walking down the street. The officers then emerged from their car. When Hack noticed that Officer Batty was following him, he took several evasive steps in an apparent attempt to flee and threw the plastic bag into a storm drain.

An on-the-scene examination of the bag retrieved from the storm drain revealed eleven tinfoil packets which Officer Batty suspected to contain marijuana treated with phencyclidine ("PCP"). The officers then arrested Owens and Hack and conducted a patdown of each for weapons. A transport car arrived to drive appellants to the precinct. Appellants sat in the back seat, each handcuffed with his hands behind his back, while one officer drove and another officer rode beside him in the front seat.

After appellants left the car, one of the officers noticed a small manila envelope wedged between the seat cushions where appellant Hack had been sitting. Inside was a substance which he believed to be marijuana. The officer then pulled up the back seat, and a plastic package fell to the floor underneath the side of the seat where appellant Owens had been sitting. This package contained a plastic syringe, nine packets of white powder and nine pills.

Laboratory tests confirmed that the substance in the yellow plastic bag was marijuana sprayed with PCP, that the substance found in the manila envelope was marijuana, that the white powder in the plastic package was heroin, and the pills in the

package were phenmetrazine. Each appellant was charged with four counts of possession.

## II

Appellant Hack contends that the trial court's failure to sever the trials of the two defendants was reversible error. He attacks his conviction on the counts of possessing heroin, phenmetrazine, and PCP on grounds of insufficiency of evidence. As to the marijuana possession count, appellant maintains that the trial court committed plain error by giving instructions which permitted a non-unanimous verdict on this charge. We address each of these contentions separately.

### A.

Hack maintains that his trial was improperly joined with that of appellant Owens and that such joinder resulted in prejudice to him and therefore warranted severance. We find that it was proper to try the codefendants together and that there was no prejudice requiring severance.

■ Defendants may be joined for trial where they are charged with participating "in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." . Super.Ct.Cr.R. 8(b). The government's evidence at trial demonstrated that Hack and Owens'

possession of the PCP in the yellow plastic bag was part of a common scheme.[1] Hack and Owens clearly participated in the "same series of acts or transactions" which constitute the offense of possession, and hence their joinder was proper.[2]

■ The trial court may order the severance of properly joined defendants if "it appears that a defendant or the government is prejudiced by the joinder." Super. Ct.Cr.R. 14. The appellant has an affirmative burden of proving prejudice from a failure to sever. *Cunningham v. United States*, D.C.App., 408 A.2d 1240, 1243 (1979); *Clark v. United States*, D.C.App., 367 A.2d 158, 160 (1976). Our review of the trial court's refusal to sever is limited to a determination of whether the broad discretion entrusted to it was abused. *Williams v. United States*, D.C.App., 382 A.2d 1 (1978); *Jackson v. United States*, D.C.App., 329 A.2d 782 (1974), *cert. denied*, 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975).

■ Appellant Hack has not demonstrated any prejudice resulting from his joint trial with Owens. Hack does not allege, and has not shown, that he was harmed by any conflicting and irreconcilable defenses,[3] nor has he demonstrated that evidence of his complicity in the crime was *de minimis* when compared to that of Owens' involvement.[4] Furthermore, there is no evidence

1. The existence of a common scheme or plan is not the *sine qua non* of proper joinder, but the transactions involved in this case clearly merit joinder. As this court noted in *Davis v. United States*, D.C.App., 367 A.2d 1254, 1261 (1976), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977):

   The series of acts envisioned by the drafters of Rule 8(b) is one in which the individual offenses are connected or interrelated in such a manner that proof of charges against one defendant would necessarily have to be introduced in proving the jointly-charged offenses, or that the government otherwise will benefit without further prejudicing the defendant. The evidence produced in the government's case against Owens would also have been produced in a case against Hack.

2. Our holding in Part B *infra* does not affect disposition of the joinder issue. According to Super.Ct.Cr.R. 8(b), "[S]uch defendants may be charged in one or more counts together or

separately and all of the defendants need not be charged in each count." That Hack was not properly charged with two counts does not invalidate the joinder.

3. Prejudice requiring severance results when the defendants offer conflicting and irreconcilable defenses and the irreconcilability creates a danger that the jury will draw the improper conclusion from the conflict alone that both defendants are guilty. *Johnson v. United States*, D.C.App., 398 A.2d 354, 368 (1979) (quoting *Rhone v. United States*, 125 U.S.App. D.C. 47, 48, 365 F.2d 980, 981 (1966)).

4. Prejudicial joinder arises "where the evidence of a defendant's complicity in the overall criminal venture is *de minimis* when compared to the evidence against his co-defendants." *Christian v. United States*, D.C.App., 394 A.2d 1, 21 (1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

in the record that the trial court was unaware of or misapplied the legal principles governing severance. We conclude that the court did not abuse its discretion in failing to order severance.

### B.

■ Appellant Hack also contends that the government's proof of possession of heroin and phenmetrazine (that had been recovered from underneath the seat in the police cruiser where Owens had been seated) was insufficient to support his conviction for possession of these substances. The court may reverse on grounds of insufficiency only "if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Curley v. United States*, 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). Because there is no evidence to support such a conclusion of guilt, we reverse as to these two counts.

■ Possession of a forbidden substance is an essential element of the offenses of which appellant was convicted. *See United States v. Staten*, 189 U.S.App. D.C. 100, 104, 581 F.2d 878, 882. (1978). At trial, the government presented its case against appellants on alternative theories of actual and constructive possession. Actual possession has been defined as the ability of an individual "to knowingly exercise direct physical custody or control over the property in question," while constructive possession exists "where a person is knowingly in a position or has the right to exercise dominion and control over the item." *United States v. Hubbard*, D.C.App., 429 A.2d 1334, 1338 (1981).

■ Appellant Hack was not able to exercise direct physical control over the package containing the heroin and phenmetrazine. The government's evidence demonstrated that this package had been concealed on appellant Owens' side of the vehicle. Although the government presented evidence that it is possible that a handcuffed individual could remove something from his clothes and conceal it in a seat, the only reasonable inference from this possibility is that Owens had actual possession.

■ In addition, the government presented no evidence from which the jury could reasonably conclude that Hack had constructive possession of heroin and phenmetrazine. One convicted of possession must have some appreciable ability to guide the destiny of the illegal substance, *United States v. Staten, supra* 189 U.S.App.D.C. at 105, 581 F.2d at 883; the record reveals no evidence of such an ability. Mere presence at the scene, association with one in possession, or proximity to the drugs do not in themselves substantiate a finding of constructive possession. *Id.* We note that "presence, proximity, or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Id.* at 107, 581 F.2d at 885. Here, however, the jury could reasonably infer that appellants Hack and Owens were involved in a common scheme involving possession of the substance in the yellow bag, but there was no evidence indicating that possession of heroin or phenmetrazine were part of an ongoing operation involving Hack.[5] The mere fact that Hack was involved in possession of PCP and marijuana does not support a finding that he knew heroin and phenmetrazine

---

5. Other courts have found no evidence of constructive possession in similar circumstances. The D.C. federal circuit in *United States v. Bethea*, 143 U.S.App.D.C. 68, 442 F.2d 790 (1971), held that the mere fact that the defendant was a passenger in the front seat of the car and was in proximity to heroin found in a cigarette package behind the back seat was insufficient to support a finding of possession. In *United States v. Bonham*, 477 F.2d 1137 (3rd Cir. 1973), heroin was found secreted in a hidden recess above the doorway of a bedroom shared by defendant and his half brother. The court found insufficient evidence of constructive possession despite the fact that suspicious articles were found in the room. It noted, "[E]ven if the prosecution had proved that these articles were marijuana and phenaphen, ... appellant's awareness of their presence would be no evidence of knowledge that heroin was concealed elsewhere." *Id.* at 1139.

were in the package, found in the police car *after* both appellees had been searched, and had the right to exercise control over such drugs. Hack's conviction on counts of possession of these substances was therefore not supported by sufficient evidence and must be reversed.

### C.

Hack further contends that there was insufficient evidence for the jury to find knowing and culpable possession of PCP. He argues that his possession of the yellow plastic bag was too momentary to support a conviction, as he had physical possession for only 15 to 30 seconds. A reasonable inference from the circumstances surrounding his contact with the bag, however, is that Hack intended to have possession of the bag and would have maintained possession had he not seen the police officer approaching him. A further inference is that Hack was aware of the illegal nature of the contents of the bag; thus evidence of *scienter* requirement was not deficient. Hack calls our attention to cases such as *People v. Mijares*, 6 Cal.3d 415, 491 P.2d 1115, 99 Cal.Rptr. 139 (1971), which have held that, to support a conviction, the possession at issue must be more than fleeting and momentary. We note, however, the following proviso by the California court in *Mijares*: "[O]ur decision in no way insulates from prosecution under narcotics laws those indi-

viduals who, fearing they are about to be apprehended, remove contraband from their immediate possession." 491 P.2d at 1120, 99 Cal.Rptr. at 144.

■ Hack urges that the government's evidence was insufficient to establish that Hack had any knowledge of the presence of the invisible PCP in the bag here. We disagree. Again, the evidence presented by the government indicated that a drug transaction had taken place. Hack opened the bag and viewed its contents before he saw the approaching officer and discarded the bag. At trial, a police officer and a detective who is a narcotics expert testified that marijuana treated with PCP is almost always packaged in tinfoil, as was that in the bag here. The jury could reasonably have inferred beyond a reasonable doubt from these circumstances that Hack intended to possess PCP.

■ Hack also asserts that the trial court committed reversible error in failing to instruct the jury that, before it could find him guilty of possessing PCP, it was required to find beyond a reasonable doubt that he was aware of the presence and the narcotic character of the PCP in the yellow bag. In light of the instructions regarding intent that the court provided the jury,[6] we find that its denial of this requested instruction was not error. The instructions,

**6.** The court [Supp.Record No. 3 at 180–81] instructed the jury as follows:

Now, the second element of this offense the Government must prove beyond a reasonable doubt is that the defendant possessed the narcotic drug or dangerous drug knowingly and intentionally. You may find that the defendant knowingly and intentionally possessed the narcotic drug or dangerous drug if he did so consciously, voluntarily and purposely, and not because of mistake, inadvertence or accident.

Now, you note I have used the word intentionally, that the Government must show they possessed it knowingly and intentionally. Intent means that a person had the purpose to do a thing. It means he acted with the will to do the thing. It means that he acted consciously or voluntarily and not inadvertently or accidentally.

Some criminal offenses require only a general intent. Where this is so and it is shown

that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the doing of the act.

Now, how do you prove intent? Intent, you see, is a state of mind. Intent ordinarily cannot be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendants' intent from the surrounding circumstances. You may consider any statement made and act done or omitted by the defendant, and all other facts and circumstances in evidence, which indicate his state of mind.

You may infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. However, you should consider all of the circumstances in evidence that you deem relevant in determining whether the Government has proved beyond a reasonable doubt that defendant acted with the required intent.

read in their entirety, properly informed the jury of all issues necessary to a finding of knowing possession. *See Montgomery v. United States*, D.C.App., 384 A.2d 655, 661 (1978).

### D.

Appellant Hack's final contention of error is directed to his conviction for possession of marijuana. He argues that the trial court committed plain error,[7] in giving instructions which permitted a nonunanimous verdict on the marijuana charge. The government linked Hack to two separate samples of marijuana: that in the yellow bag which was treated with PCP and that found in the transport car in which he rode after being arrested. Hack contends that the jury instruction permitted a guilty verdict on the marijuana count even if six jurors doubted that he possessed the marijuana in the yellow bag and six doubted that he possessed the other sample recovered from the police vehicle.

■ The requirement for a unanimous verdict, as set forth in the Sixth Amendment to the United States Constitution and Super.Ct.Cr.R. 31(a), "requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether that defendant is guilty of the crime charged." *United States v. Gipson*, 553 F.2d 453, 457–58 (5th Cir. 1977), *quoted in Johnson v. United States, supra* at 369. Because of the possibility of a nonunanimous verdict, when one charge encompasses two separate incidents, the judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which incident or incidents they

find the defendant guilty. *Hawkins v. United States*, D.C.App., 434 A.2d 446 (1981). The record before us reflects that the trial court did not make clear to the jury that, in order to find Hack guilty, they must either unanimously conclude that he possessed the marijuana in the yellow bag or unanimously agree that he possessed that in the car.

■ In light of the jury's unanimous verdict as to the PCP count, however, we conclude that the error in instructions was harmless. This verdict demonstrated that a unanimous jury concluded that appellant knowingly possessed the contents of the yellow bag, and the evidence was uncontradicted that this bag contained marijuana treated with PCP. Under these specific circumstances, we conclude that the jury did in fact reach a unanimous verdict with respect to the possession of marijuana and hence we find the error harmless beyond a reasonable doubt.[8] *See Brooks v. United States*, D.C.App., 367 A.2d 1297 (1976); *United States v. Holiday*, 157 U.S.App.D.C. 140, 482 F.2d 729 (1973).

### III

Appellant Owens alleges reversible error in the trial court's failure to limit the jury instruction on flight or concealment to his codefendant Hack. He also asserts that the court erred in excluding his proffered character testimony.

### A.

The trial court gave a standard jury instruction on flight or concealment by the defendant,[9] but failed to expressly limit

---

7. As no objections to the marijuana charge or to the trial court's instructions regarding this count were made at trial, appellant must demonstrate plain error. *E.g., Cobb v. United States*, D.C.App., 246 A.2d 777, 778 (1968).

8. This case does not present a "plain error of a constitutional magnitude" as in *Hawkins, supra* at 449, since there was no "shift in legal theory ... after the jury began its deliberations coupled with the ambiguous instructions ...." *Id.*

9. The court [Supp.Record at 181–182] provided the following instruction:

There has been some evidence introduced that you may or may not consider, and that is flight or concealment by a defendant. Flight or concealment by a person after a crime has been committed or after he has been accused of a crime may be motivated by a variety of factors which are fully consistent with innocence. It does not create a presumption of guilt, nor does the person's flight or concealment necessarily reflect feelings of guilt. Furthermore, since innocent persons some-

that instruction to Hack, as appellant Owens requested. The government concedes, and we agree, that there was no evidence that Owens attempted to flee or conceal himself prior to his arrest. The court improperly concluded that this instruction was applicable to the abandonment of drugs in the back seat of the transport car. "Concealment" refers to concealment of the person, not of evidence. *See, e.g., Austin v. United States*, 134 U.S.App.D.C. 259, 261–62, 414 F.2d 1155, 1157–58 (1969).

We find on the basis of the record in its entirety, however, that this error was harmless. The government's evidence of Owens' possession of the drugs was strong. In addition, this particular instruction did not require the jury to weigh evidence of flight or concealment against the defendants, but stressed that they need not consider such evidence. As the record does not demonstrate that the error substantially swayed the verdict, the failure to limit this instruction did not constitute reversible error. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Cooper v. United States*, D.C.App., 415 A.2d 528, 535 (1980); *Woody v. United States*, D.C.App., 369 A.2d 592, 594 (1977); *Conyers v. United States*, D.C.App., 309 A.2d 309, 313–14 (1973).

### B.

Appellant Owens contends that the trial court improperly excluded his proffered character testimony regarding his reputation in the community for nonuse of drugs. Because we agree with the trial court that the proffered testimony would not have presented evidence of a character trait, we conclude that the court did not err in failing to admit it.

Courts traditionally have been cautious about the introduction of testimony relating to character. This form of testimony is by nature hearsay and hence lacks the substantial reliability of direct testimony. Furthermore, there is a danger that character evidence will confuse the jury as to the specific issues involved in the trial at hand and that such evidence will lead to an exploration of irrelevant collateral matters.[10] *See generally Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Shimon v. United States*, 122 U.S.App.D.C. 152, 352 F.2d 449 (1965). Hence the prosecution is precluded from attacking the character of the defendant until the defense places it in issue. *E.g., Adams v. District of Columbia*, D.C.Mun. App., 134 A.2d 645, 647 (1957).

A defendant, however, is generally allowed to raise at trial character traits which are antithetical to the charged offense. *E.g., Cooper v. United States*, D.C. App., 353 A.2d 696 (1975) (reputation for truth and honesty admissible in trial for negligent homicide and assault *where defendant testified*). Those "character traits" which are admissible are abstract qualities which reflect one's general and permanent moral character, such as honesty, veracity, peacefulness, or a law-abiding nature. *See* 1 Wigmore, Evidence § 59 (3d ed. 1940); 5 Wigmore, Evidence § 1620 (Chadbourn rev. 1974). As the Supreme Court noted in *Michelson, supra* at 476, 69 S.Ct. at 218, "because character is relevant in resolving probabilities of guilt," the de-

---

times have feelings of guilt, such feelings do not necessarily reflect actual guilt.

While you may consider flight or concealment as one circumstance tending to show feelings, and you may also consider feelings of guilt, you are not required to do so. Under no circumstances may you presume a defendant's guilt from his flight or concealment. You should consider and weigh evidence of flight or concealment by the defendant in connection with all the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive.

10. The problems of character testimony led Justice Jackson in *Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948), to conclude:

Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject.

fendant may introduce testimony "that the general estimate of his character is so favorable that he would not be likely to commit the offense charged." Yet the inherent dangers of character testimony have led courts to preclude evidence of the defendant's specific acts or courses of conduct to show that he did not commit the particular act or acts with which he is charged. *See Michelson v. United States, supra* at 477, 69 S.Ct. at 219;[11] *United States v. Bishton,* 150 U.S.App.D.C. 51, 57, 463 F.2d 887, 893 (1972). Thus it is permissible for the jury to resolve probabilities as to the defendant's guilt based on his *general* character traits which those who know him in the community are aware of, whereas the inference from a series of acts in the past to the commission of the act charged is impermissible.

 Appellant urges us that evidence of his non-use (or non-sale) of drugs should have been admitted through witnesses who could testify to his reputation for not using (or selling) drugs. Even if witnesses could testify that appellant had such a reputation, this testimony does not reveal a characteristic quality of the appellant, but rather describes the knowledge of others that appellant has not committed certain acts in the past. To allow this testimony would likely obscure the true issues; rather than contributing to a determination of whether appellant possessed the drugs involved, the jury's attention instead would be directed toward a determination of whether appellant uses drugs.[12] We thus conclude that there was no error in the trial court's decision to exclude such testimony.

## CONCLUSION

Finding no reversible error as to the evidentiary rulings or jury instructions as to appellant Owens, we affirm his conviction on all counts. We also affirm Hack's convictions on counts of possession of PCP and marijuana, as we find that the government produced sufficient evidence for a unanimous jury to conclude beyond a reasonable doubt that appellant was guilty as to each count. Finding insufficient evidence of Hack's possession of phenmetrazine and heroin, the items recovered from the car where appellant Owens was seated, we reverse his conviction on these charges.

*So ordered.*

---

11. Justice Jackson described admissible character testimony as follows:

   The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood. This has been well described in a different connection as "the slow growth of months and years, the resultant picture of forgotten incidents, passing events, habitual and daily conduct, presumably honest because disinterested, and safer to be trusted because prone to suspect . . . . It is for that reason that such general repute is permitted to be proven. *It sums up a multitude of trivial details.* It compacts into the brief phrase of a verdict the teaching of many incidents and the conduct of years. It is the average intelligence drawing its conclusion." [*Michelson v. United States, supra* at 477, 69 S.Ct. at 219 (emphasis supplied).]

12. We note that appellant's propensity to refrain from using drugs is of questionable relevance to his possession of the amount of drugs involved in this case.