**Eddie M. SCARBOROUGH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–754.**

District of Columbia Court of Appeals.

Submitted May 9, 1985.

Decided Aug. 7, 1985.

Geoffrey D. Allen, Washington, D.C., for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, Leonard E. Birdsong, and Gerald W. Heller, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, NEWMAN and FERREN, Associate Judges.

**PER CURIAM:**

We affirm appellant's conviction for receiving stolen property (felony), D.C.Code § 22–2205 (1981)—as we conclude we must, see *M.A.P. v. Ryan,* 285 A.2d 310 (D.C. 1971)—on the basis of the second holding of *Barkley v. United States,* 455 A.2d 412, 415–16 (D.C.1983). However, because we find *Barkley* unpersuasive authority, and a majority of this division would reverse if free to do so, we express our views in the separate "concurring" opinions below.

FERREN, Associate Judge, concurring:

A jury convicted appellant of one count of receiving stolen property (felony),[1] D.C. Code § 22–2205 (1981), and the court sentenced him to a term of one to three years' imprisonment, with execution of sentence suspended during a three year period of probation. He argues on appeal that the court abused its discretion in denying his motion for a new trial. He cites the court's failure to instruct the jurors that, in order to convict under a single count of receiving two distinct classes of stolen property, they must unanimously agree on what class of items he unlawfully received.[2] I agree that

---

**1.** Appellant was acquitted of second-degree burglary, D.C.Code § 22–1801(b) (1981); grand larceny, *id.* § 22–2201 (1981); and malicious destruction of property, *id.* § 22–403 (1981).

**2.** Appellant also argues that the court's failure to so instruct allowed the possibility that different jurors may have relied on different items in concluding that the value of the property received exceeded $100, a prerequisite for a felony conviction. In view of our disposition, I need not address this argument.

this omission of a special unanimity instruction violated appellant's Sixth Amendment rights. Therefore, but for binding precedent that compels affirmance, I would reverse and remand for a new trial.

## I.

Complainant, Bradford Callahan, maintained a body shop in which he engaged in body and fender work as a hobby. On Saturday evening, November 21, 1982, Callahan locked up his shop for the weekend. When he returned Monday morning, he discovered that the locks had been cut off and that various tools and supplies had been stolen. He reported the theft to the police. He then went to see appellant, who worked as a mechanic in the neighborhood to inquire about a car that appellant had wanted him to paint. Appellant advised Callahan that he planned to try painting the car himself, and Callahan asked to see appellant's spray paint gun. Appellant showed him several spray guns, three of which Callahan recognized as his own. Two of the spray guns had Callahan's initials on them; he recognized the third by identifying certain replacement parts that he had just installed. Callahan testified that he had paid $90 for one of the guns and between $125 and $175 apiece for the other two. He further stated that, because the retail value of similar spray guns had increased since he bought his, the spray guns were currently worth more than $100 each. Appellant told Callahan that he had purchased the three spray paint guns from a man who came by the shop and did some work in the neighborhood. Callahan asked appellant to identify this man, and appellant agreed to help Callahan locate him. The search was unsuccessful, but appellant returned the spray guns to Callahan.

A few days later, Callahan spoke to Detective Vacin of the Metropolitan Police Department and told him that he had recovered the spray guns from appellant. Callahan identified appellant from some police photographs, then accompanied Vacin to a

nearby garage belonging to Ms. Mazel Smith, where appellant sometimes worked. Appellant stored some of his tools there and had exclusive use of the garage. There, Callahan found a grinder which he identified as his because it had a cracked handle and two cuts in the power court. Callahan testified at trial that the grinder had a current value of at least $150.

At trial, appellant presented separate defenses as to each class of stolen property. He repeated his claim that he had purchased the spray guns in good faith from a man in the neighborhood. He asserted that he had received the grinder from Pensie Thraxton, the woman with whom he lived, who in turn had received it from her father. Appellant's defenses were supported in part by the testimony of Ms. Thraxton and others.

At the close of the evidence, the court discussed proposed instructions with counsel and announced its intention to give the standard unanimity instruction.[3] Appellant's counsel neither objected to the court's proposal nor requested a special instruction, and he later advised the court that he was "satisfied" with the instructions. The court accordingly instructed the jury on the elements of the crime and added that "[i]n order to return a verdict, it is necessary that each juror agree to the verdict. Your verdicts must be unanimous."

Following the jury's verdict, appellant filed a motion for a new trial, asserting that the trial court had erred in failing to instruct the jury that it must unanimously agree on which items of Callahan's property appellant had feloniously received. Appellant argued that it would have been possible for the jury to convict under the court's instruction if, for example, six jurors had believed appellant guilty of receiving the spray guns but not the grinder while the other six had believed him guilty of receiving the grinder but not the spray guns—a nonunanimous verdict as to any of

**3.** Criminal Jury Instructions for the District of Columbia, No. 2.69 (3d ed. 1978).

the property. The court denied this motion.

## II.

In arguing that the court abused its discretion in denying his new trial motion, appellant relies on the following line of cases: *Johnson v. United States*, 398 A.2d 354, 368 (D.C.1979); *Hawkins v. United States*, 434 A.2d 446, 449 (D.C.1981); *Hack v. United States*, 445 A.2d 634, 641 (D.C. 1982); and *Davis v. United States*, 448 A.2d 242, 244 (D.C.1982) (per curiam). In *Hawkins*, for example, we said that the Sixth Amendment requirement for a unanimous verdict[4] requires that "[w]here one charge encompasses two separate incidents, the judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which incident or incidents they find the defendant guilty." 434 A.2d at 449 (citation omitted).[5] Such an instruction is necessary to prevent the possibility that some jurors might vote to convict based solely on one incident while others vote to convict based solely on the other. *Id.* at 448–49. We have held, moreover, that the failure to give such a unanimity instruction in these circumstances is "plain error of a constitutional magnitude" requiring reversal. *Id.* at 449; *accord Davis*, 448 A.2d at 244.

Appellant acknowledges that we have rejected a similar Sixth Amendment "unanimity" claim when the charge of stealing two distinct classes of property was based on a single incident. In *Barkley v. United States*, 455 A.2d 412 (D.C.1983), appellant was convicted of petit larceny for the theft

4. *See also* Super.Ct.Crim.R. 31(a), which provides that "The verdict shall be unanimous."

5. A California intermediate court of appeals also has ruled, in a receipt of stolen property case, that when one count embraces two incidents, a trial judge must give a special unanimity instruction *sua sponte*. *People v. Parsons*, 156 Cal.App.3d 1165, 1173–74, 203 Cal.Rptr. 412, 418 (1984).

6. The dissent in *Barkley*, 455 A.2d at 417, took issue with this analysis:

of various items from complainant's apartment one Thanksgiving Day. Appellant raised separate defenses for these items. He conceded taking one, a stereo amplifier, but defended that taking by a claim of right. He denied participation in the theft of the other items, blaming his codefendant. *Id.* at 413–14. We rejected appellant's argument that these two classes of thefts were conceptually severable because of appellant's distinct defense theories. We said that the thefts and appellant's alleged participation

> are founded in just one set of factual circumstances not separated by time or by intervening incidents. The evidence as to each theory of liability is the same. There was but one offense based on a unitary event, rather than two separable and distinct offenses, as there were in *Hack*.

\* \* \* \* \* \*

In the case at hand, the jury was instructed to return a unanimous verdict ... and there is no indication that they did not, in fact, agree unanimously as to what property appellant stole. However, whatever credence the jury may have accorded appellant's defenses, the jury was at least unanimous in finding that appellant took *some* of the complainant's property, having *some* value, without his consent and without right. These are the essential elements of the offense of petit larceny, D.C.Code 1981, § 22–2202, and under these circumstances involving a single uninterrupted event, we conclude that the unanimity requirement is satisfied.[6]

[The judges in the majority] say "there is no indication that [the jury] did not, in fact, agree unanimously as to what property appellant stole." *Ante* at 416. But, in the very next sentence, they allow for the possibility that the jury was not unanimous. They acknowledge that the jurors may have accepted different defenses, and thus may have differed as to what property appellant stole.... In sum, the majority permits a jury to tack together a unanimous verdict even when they disagree as to what property—clearly differentiable by

*Id.* at 415–16 (emphasis in original); *see Derrington v. United States,* 488 A.2d 1314, 1335–36 (D.C.1985).

Appellant seeks to distinguish *Barkley* on three grounds: First, the evidence in the present case established that there was a significant interval—Saturday evening to Monday morning—during which Callahan was absent from his garage. Thus, in contrast with *Barkley,* where the thefts unquestionably took place at one time, it was not unlikely here that, once the garage was burglarized (perhaps as early as Saturday night), more than one discrete theft occurred over the next day or day and a half. Second, contrary to *Barkley,* the government produced no direct evidence of appellant's presence at Callahan's garage during the weekend, which would permit an inference of a single theft. Finally, the stolen items in this case were recovered from different locations (we do not know about *Barkley* in this respect), and appellant (as in *Barkley* ) proffered a different, exculpatory explanation as to how he received each; thus, there was evidence tending to rebut the circumstantial evidence of a single theft. According to appellant, therefore, the court should not have based its instructions on the premise that "[t]here was but one offense based on a unitary event, rather than two separable and distinct offenses." *Id.* at 415.

Appellant's argument is not unpersuasive. It reveals that mischief in *Barkley* by showing that, unless *Barkley* is confined to its facts, the "single uninterrupted event" test, *id.* at 416, will ultimately force the trial court, as well as this court, into a quagmire of fine—and perhaps strained—distinctions in case after case; judges will have to determine how far *Barkley*'s one-event, two-event distinction can be maintained in the absence of direct evidence clearly establishing "just one set of factual circumstances not separated by time or by intervening incidents." *Id.* at 415. Accordingly, appellant in effect asks this court to confine *Barkley* to its facts, in an easily administrable way, by creating a "separate incidents" presumption for all cases in which an accused is charged with one count of receiving two distinct classes of stolen property except, as in *Barkley,* when there is direct evidence that all the property was received at one time and the accused was assuredly on the scene.

As I see it, that approach, while superficially appealing, would be jurisprudentially unsound (if not an inappropriate refusal to follow the binding legal premise of *Barkley* ) it would incorporate, in the *Barkley* exception, an incorrect legal premise. The truth is—as elaborated in Part III. below—the *Barkley* analysis itself is plainly wrong, indeed unconstitutional. A more principled approach, derived from constitutional considerations underlying the *Johnson-Hawkins-Hack* line of cases, is required—an approach that mandates reversal here.

Because only the en banc court can take the action necessary to bury the second holding of *Barkley,* we must apply *Barkley* here. Although the question is close, I cannot say the trial court abused its discretion in denying appellant's new trial motion when it concluded that "the government proved one burglary" and that the jury "must ... have concluded that the receipt of the property was a single incident." We therefore must affirm appellant's conviction. Perhaps the result would be differ-

reference to separate legal defenses—was stolen.

... My colleagues find [*Hack* ] inapposite because *Hack, supra,* and similar cases "involved single verdicts which were based on two entirely separate incidents, acts which were conceptually severable and chargeable as separate offenses." *Ante* at 415 (footnote omitted). This is a distinction without a difference, for even though it can be said, in this case, that there is "just one set of factual circumstances not separated by time or by intervening incidents," *ante* at 415, the alleged thefts here *are* conceptually severable—and thus legally quite "separate incidents," *Hack, supra* 445 A.2d at 641—given the separate defenses (claim of right and denial) directed at separate items of property. [Footnote omitted] [Emphasis Added].

ent if, for example, there were evidence that a person other than appellant had been seen near Callahan's garage during the weekend when the burglary occurred.

### III.

In order to understand the problem in *Barkley*, it is important to examine the policy underlying the requirement for unanimous verdicts in criminal trials. In the companion cases of *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the Supreme Court expressly recognized the constitutional right to a unanimous jury verdict in federal criminal trials,[7] a principle long assumed to be an indispensable feature of the Sixth Amendment right to trial by jury. *See, e.g., Andres v. United States*, 333 U.S. 740, 748–49, 68 S.Ct. 880, 884–85, 92 L.Ed. 1055 (1948); *Patton v. United States*, 281 U.S. 276, 288–90, 50 S.Ct. 253, 254–55, 74 L.Ed. 854 (1930). Although the Court rejected the argument that unanimity is necessary in order to effectuate the requirement of proof beyond a reasonable doubt, *Johnson*, 406 U.S. at 360–63, 92 S.Ct. at 1623–25; *see Apodaca*, 406 U.S. at 411–12, 92 S.Ct. at 1633–34, it implicitly acknowledged that the unanimous jury requirement may help effectuate the reasonable doubt standard. *Johnson*, 406 U.S. at 362, 92 S.Ct. at 1624.[8]

Since *Johnson* and *Apodaca*, a number of courts, including our own, have adopted the view that the unanimity requirement is linked to the reasonable doubt standard. *See, e.g., Johnson*, 398 A.2d at 369–70; *United States v. Gipson*, 553 F.2d 453, 457

& n. 7 (5th Cir.1977); *People v. Kent*, 125 Cal.App.3d 207, 212–13, 178 Cal.Rptr. 28, 31–32 (1981); *State v. Lomagro*, 113 Wis.2d 582, 591, 335 N.W.2d 583, 589 (1983); *see generally* Note, *Right to Jury Unanimity on Material Fact Issues:* United States v. Gipson, 91 HARV.L.REV. 499 (1977). Jury unanimity "ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense," *Lomagro*, 113 Wis.2d at 591, 335 N.W.2d at 589, and "thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *Gipson*, 553 F.2d at 457–58. In sum, without jury agreement as to the specific act the defendant committed, the right to a unanimous jury verdict is meaningless. *Id.* at 458.

I believe this unanimity requirement is applicable whenever there is evidence tending to show *legally* separate incidents (as in *Barkley* and in this case), not just factually separate incidents. If a special unanimity instruction is required when the evidence, under a single count, tends to show that the defendant received different items of stolen property at different times, *People v. Parsons*, 156 Cal.App.3d 1165, 1173–74, 203 Cal.Rptr. 412, 418 (1984); *see Davis*, 448 A.2d at 244; *Hack*, 445 A.2d at 641, there is no principled basis for saying that such an instruction is not required when a defendant presents separate defenses to a single count charging receipt of different items of stolen property at the same time. *See Barkley*, 455 A.2d at 417 (1983) (Ferren, J., dissenting). In either

---

7. In *Apodaca*, the Court ruled that, although federal criminal defendants have a Sixth Amendment right to unanimous jury verdicts, this right is not applicable to the states through the Fourteenth Amendment. 406 U.S. at 411–12, 92 S.Ct. at 1633–34. The Sixth Amendment is, of course, directly applicable to the District of Columbia. *In re J.T.*, 290 A.2d 821, 822 & n. 7 (D.C.), *cert. denied*, 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972); *see Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

8. The requirement that the government prove each element of an offense beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), is "an essential of the due process guaranteed by the Fourteenth Amendment." *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979), *quoted in Dumas v. United States*, 483 A.2d 301, 305 (D.C.1984).

case, the issue under a single count is subdivided "into two distinct conceptual groupings." *Gipson*, 553 F.2d at 458. Therefore, unless there is a special unanimity instruction, there can be no assurance that the jury unanimously agreed "as to just what a defendant did." *Id.* at 457.[9]

In short, the unanimity issue, under a single count of an information or indictment, does not turn only on whether separate criminal acts occurred at separate times (although in some cases it may); it turns, more fundamentally, on whether each act alleged under a single count was a separately cognizable incident—by reference to separate allegations and/or to separate defenses—whenever it occurred. Accordingly, the portion of our opinion to the contrary in *Barkley*, 455 A.2d at 415–16, should be overruled.

### IV.

I turn, finally, to the question whether, in light of defense counsel's acquiescence in the instructions, there nonetheless was plain error—as we held in *Hawkins* and *Davis*.[10]

The failure to assure jury unanimity violated appellant's Sixth Amendment rights. *See Hawkins*, 434 A.2d at 449; *Johnson*, 398 A.2d at 368–70. Thus, if counsel had objected to the instructions on this ground, reversal would be required because the error could not be deemed harmless beyond a reasonable doubt. *See Gipson*, 553 F.2d at 457, 459. We therefore confront the question whether this constitutional error, under the circumstances, is tantamount to plain error.[11]

Counsel here cannot be faulted, in light of *Barkley*, for acquiescing in the court's instructions. Indeed, the trial court itself can be excused for the same reason. Thus, even if it were theoretically possible to find no plain error when there would have been reversible constitutional error if counsel had objected at trial, *see supra* note 11, it would be plainly unjust, given our own erroneous analysis in *Barkley* on which court and counsel relied, to deprive appellant of his constitutional rights. I conclude there was an error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc) (citations omitted). Rever-

---

9. *Gipson* provides still another variation of the same problem. There, appellant was charged under a single count with two distinct conceptual groupings of offenses: unlawfully (1) receiving, concealing, and storing a vehicle and (2) bartering, selling, and disposing of it. Unlike the present case or our earlier decisions discussed above, all the government's allegations, in *Gipson* concerned the same property; but a unanimity problem arose because of the distinct differences between the two groups of acts charged (and the corresponding legal defenses) with respect to that property. Although the two categories of conduct occurred at different times, the court did not focus on that difference; instead, Judge Wisdom premised the decision on the more fundamental question whether, "under the instruction, the jury was permitted to convict Gipson even though there may have been significant disagreement among the jurors as to what he did." 553 F.2d at 458–59. The district judge had instructed the jurors (over objection) that they could convict if they unanimously agreed that Gipson had committed at least one of the six charged acts—with the result *that some jurors could have found he committed an act in the first conceptual grouping, but*

not in the second, while other jurors could have found him guilty of an act in the second grouping but not in the first. The court of appeals reversed because the instruction violated "Gipson's right to a unanimous jury verdict." 553 F.2d at 459.

10. In *Hack*, we found error, but no plain error mandating reversal, because the jury's verdict on another count—possession of PCP—made clear that the jury, in finding appellant guilty of possessing marijuana, unanimously found that he possessed the sample of marijuana laced with PCP, without regard to whether the jury may have split on whether he possessed the other sample of marijuana seized separately.

11. Perhaps this question is too narrow. The more general question is whether our standard of review for plain error can ever be higher than for constitutional error. More specifically, could an appellate court, on direct review, ever affirm a conviction, on the ground of no plain error, when it is clear that a constitutional error at trial was not harmless beyond a reasonable doubt? *See generally Allen v. United States*, 495 A.2d 1145, 1151–1152 (D.C.1985) (en banc).

sal for plain error is accordingly warranted.

NEBEKER, Associate Judge, concurring:

*Barkley v. United States,* 455 A.2d 412 (D.C.1983), is of doubtful value as precedent. Super.Ct.Crim.R. 31(a), in accord with U.S.Const. art. III, § 2, cl. 3 and amend. VI, mandates jury unanimity. Nevertheless, the trial court was justified in relying on *Barkley,* for that decision and the decisions in *Davis v. United States,* 448 A.2d 242 (D.C.1982) and its predecessors, cannot validly be distinguished on their facts from the instant case.[1] Thus, the trial court was bound to follow the more recent decision in *Barkley.* Since this division cannot overrule *Barkley,* we must affirm the trial court's judgment. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

If this question were to be considered en banc, I do not believe this court should hold that the failure to give a special uninamity instruction is plain error in all cases involving separately cognizable incidents by reference to separate allegations or defenses or both. We must also allow for cases in which the facts render the failure to give a special unanimity instruction a harmless error, either by the weight of the evidence or by the logical implausibility of nonunanimity in the verdict. *See Hack, supra* note 1, 445 A.2d at 641 (failure to give a special unanimity instruction deemed a harmless error); *see generally Miley v. United States,* 477 A.2d 720, 724 (D.C.1984) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)) (a constitu-

tional error must be harmless beyond a reasonable doubt).

This case is a fine example of harmless error on the special unanimity question. Thus, assuming error, the court should affirm the conviction anyway. The facts strongly suggest that the jury was unanimous that Scarborough received the sprayguns knowing or having cause to believe that they were stolen. D.C.Code § 22–2205 (1981). Certain facts were proved by admission. Scarborough judicially admitted that less than four days after the burglary, he purchased the sprayguns for $60, well below their value of $300 to $500 as stated by the complainant. Scarborough testified that he bought them from a neighborhood man offering a variety of tools from the trunk of his car. Two of the sprayguns were engraved with the complainant's initials and the third spraygun was easily identified by the complainant. After being confronted by the complainant, Scarborough admitted that they belonged to the complainant as the true owner. Scarborough's only excuse was that he received the sprayguns without a guilty mind. On the other hand, Scarborough claimed that he received the grinder from his girlfriend long before the burglary and he introduced evidence to refute complainant's claim of ownership.

We must assume that the jury convicted Scarborough via the simplest route. Thus, the jury inferred that Scarborough had a guilty mind regarding the sprayguns because he admittedly received them while paying a very low price for them. *Payne v. United States,* 171 A.2d 509, 510 (D.C. 1961). That course of least resistance anal-

---

**1.** In *Johnson v. United States,* 398 A.2d 354 (D.C. 1979), defendants committed two separate assaults; the court held that the general unanimity instruction was given in error (although not plain error). In *Hawkins v. United States,* 434 A.2d 446 (D.C.1981), defendant committed two separate assaults; the court held that the shift in the prosecution's legal theory and the ambiguity of the general unanimity instruction constituted plain error. In *Hack v. United States,* 445 A.2d 634 (D.C.1982), defendant was convicted of drug possession of two objects; the court held that

the general unanimity instruction was a harmless error. *See also Hack, supra,* 445 A.2d at 641 n. 8 (distinguishing its result from that in *Hawkins* ).

In *Davis,* defendant asserted separate defenses in a conviction for drug possession of two objects; the court held that the general unanimity instruction was plain error. In *Barkley,* defendant asserted separate defenses in a conviction for petit larceny of numerous objects; the court held that the general unanimity instruction was not erroneous.

ysis accepts the admission from the witness stand that Scarborough received the sprayguns shortly after their theft. *Blackledge v. United States*, 447 A.2d 46, 50 (D.C. 1982) (jury may infer guilt where defendant received recently stolen property). Thus, we should assume the jury convicted Scarborough based on his own admissions regarding the sprayguns without resolving the conflict in ownership of the grinder. There is, therefore, no plain error affecting substantial rights.

Accordingly, this case is not a proper vehicle for overturning *Barkley*. It is, however, a good example of why a rule mandating plain error in every instance is not appropriate in these cases. To establish such a rule would invite undesirable strategic behavior by defense counsel. Defense counsel should not be afforded an opportunity to retry the case by failing to object to a general unanimity instruction, only to assert plain error on appeal.

We have recognized that defense counsel has an incentive, absent a rule to the contrary, to withhold objections to a jury instruction until after the verdict is reached. If the jury acquits, counsel says nothing. If the jury finds the defendant guilty, defense counsel raises the objection on appeal and the defendant may receive a new trial.[2] In order to discourage the intentional withholding of objections by defense counsel, errors not objected to at trial are unreachable on review unless they fall within the purview of the plain error rule. *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc). This includes constitutional errors not raised at trial. *See Thompson v. District of Columbia*, 407 A.2d 678, 679 n. 2 (D.C.1979). Under the plain error standard, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. *Watts, supra*, 362 A.2d at 709. A rule which finds that the failure to give a special unanimity instruc-

tion is always "plain error of a constitutional magnitude," *Hawkins, supra* note 1, 434 A.2d at 449, would defeat the purpose of the plain error rule by reintroducing the incentive.

Whether a special unanimity instruction is appropriate depends on evidence revealing "separately cognizable incident[s]—by reference to separate allegations and/or separate defenses." Concurring Opinion of Ferren, J., *supra* at 282. A special instruction is warranted when there is evidence of special facts sustaining a rational defense theory. *Martin v. United States*, 452 A.2d 360, 362 (D.C.1982). With the knowledge that he may control the necessity of the special unanimity instruction, defense counsel's failure to object to a general unanimity instruction is a strategic decision. The fairness and integrity of the trial would be jeopardized by allowing an appellant to assert plain error after consciously accepting a general unanimity instruction. As we require the defense to exercise more responsibility over the use of the special unanimity instruction, we must consider more skeptically counsel's assertion of plain error.

Moreover, a verdict form which requires the jury to determine the guilt or innocence as to each separately cognizable incident may be a good accompaniment to the special unanimity instruction. Special verdicts are disfavored in criminal cases because the jury must be free from judicial pressure and control. *United States v. Orozco-Prada*, 732 F.2d 1076, 1084 (2d Cir.1984); *United States v. Southard*, 700 F.2d 1, 16 (1st Cir.1983). Yet where defense counsel agreed to the use of a jury verdict interrogatory form, there was no error. *Southard, supra*, 700 F.2d at 16 (interpreting identical Fed.R.Crim.P. 31(a)). Such a verdict form would ensure actual jury unanimity in compliance with Super.Ct.Crim.R. 31(a).

Finally, an automatic plain error rule would unwisely reward where the error

---

**2.** The prosecution does not have the same incentive. The government is precluded from appealing acquittals by the Double Jeopardy Clause of

the Constitution. *United States v. Powell,* — U.S. ——, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984).

was harmless. It is particularly important that this question be put to the trial court on a timely motion for a new trial. If the motion is denied we review a plain error decision by the trial court rather than decide the question of plain error in the first instance. We should, therefore, review for plain error on a case-by-case basis according to the behavior of defense counsel and the facts of the case.

NEWMAN, Associate Judge, concurring:

We are bound by *Barkley v. United States*, 455 A.2d 412 (D.C.1983), which I believe was wrongly decided. While *Barkley* may perhaps be limited to its facts, I think it more appropriate that it be overturned by the *en banc* court. I am also satisfied that failure to properly instruct as to unanimity creates a constitutional issue.

*See Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *Johnson v. United States,* 398 A.2d 354, 369–70 (D.C.1979). If trial counsel had objected, the constitutional error test of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), would be applicable. *See United States v. Gipson,* 553 F.2d 453, 457 (5th Cir.1977). There being no objection in this case, I would find plain error under the test of *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).