Allen N. WRIGHT, Appellant,

v.

UNITED STATES, Appellee.

Clarence BYNUM, Appellant,

v.

UNITED STATES, Appellee.

Nos. 79–321, 79–380.

District of Columbia Court of Appeals.

Argued April 29, 1980.
Decided July 25, 1980.

---

Lawrence S. Lapidus, Washington, D. C., appointed by this court, for appellant Bynum.

Linda J. Ravdin, Washington, D. C., appointed by this court, for appellant Wright.

Richard C. Bicki, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Peter E. George and Thomas J. Tourish, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, GALLAGHER and FERREN, Associate Judges.

PER CURIAM:

A jury convicted appellant Wright of robbery, D.C. Code 1973, § 22–2901, and appellant Bynum of assault, D.C. Code 1973, § 22–504, in connection with a March 1978 incident in Northwest Washington.[1] In seeking reversal of those convictions, each of the appellants presents two principal arguments. We conclude that only one of these four contentions requires extended discussion.

■ Thus, we summarily reject Wright's first argument that a combination of circumstances at trial denied him his right to due process of law. Specifically, Wright cannot persuasively complain about the court's instruction to the jurors in response to their question during deliberation regarding the wording of the indictment.[2] Wright's defense counsel approved such instruction and it clearly did not constitute plain error. See Super.Ct.Cr.R. 30. Nor is Wright now in a position to fault the court's omission of any instruction on the elements of the crime of larceny. The absence of such an instruction, he now claims, might have led to jury confusion between larceny—which was not charged in the indictment but as to which Wright at trial apparently conceded guilt—and the charged crime of robbery. However, his counsel failed to request such an instruction, and there was no obligation on the court to give such an instruction sua sponte. Wright's

counsel presented in closing argument his theory of the defense—that although appellant probably was involved in some sort of "flim-flam" by which he "trick[ed] someone out of some money,"[3] he could not be guilty of robbery because his acquisition of the money "did not come by force." Moreover, the court included in its instruction on robbery this statement: "It is not sufficient merely that the defendant acquired possession of the property. He must have acquired possession by force and violence." We conclude that the theory of the defense was adequately presented to the jury.[4]

■ We likewise reject appellant Wright's second contention that the court committed reversible error in refusing to give the jury, during the course of the government's case, an instruction concerning the apparent inconsistency between the grand jury testimony and the trial testimony of one of its witnesses.[5] This contention is wholly without merit given the court's general instruction on evaluation of prior consistent and inconsistent statements of witnesses, contained in its final charge to the jury.

■ We turn now to the two contentions of appellant Bynum. They both revolve around the court's pretrial suppression of certain photographs depicting Bynum holding a pistol having such distinguishing features as to suggest very strongly that it

1. The evidence at trial indicated that Wright, Bynum, and a third defendant, after entering the complainants' automobile to direct them toward an area of 14th Street N.W., attempted to rob the two complainants. A general melee ensued among the five people, one of whom had a pistol.

2. During their deliberations, the jury sent a note to the judge asking why the defendants were charged with *armed* robbery of one of the complainants but only with *robbery* of the other complainant. After learning that the discrepancy had apparently resulted from a clerical error, the judge answered the jury's note by instructing them not to concern themselves with why the grand jury worded the indictment as it did.

3. Wright allegedly told one of the complainants that, in exchange for a sum of money, Wright could arrange for the complainant to have sex

with the woman accompanying Wright and Bynum. At trial Wright claimed that this was the means by which he acquired the complainant's money.

4. This same reasoning convinces us that counsel's failure to request an instruction on the elements of larceny *did not blot out the essence* of a substantial defense and that therefore appellant Wright was not denied his right to effective assistance of counsel. *See Oesby v. United States*, D.C.App., 398 A.2d 1, 4 (1979).

5. The complainant had testified before the grand jury that defendant Wright had the pistol during the entire incident. At trial he stated that the codefendant beat the other victim with the pistol.

was the pistol used to commit the crime.[6] First, Bynum argues that his sentence must be reversed because the trial court improperly took those photographs into account in imposing the maximum sentence of one year for assault. The record reflects, however, that at sentencing the court relied upon the prior convictions of appellant Bynum and his "living by illegal means" as justification for the maximum term. Although the photographs were physically present at the sentencing proceeding—because the prosecutor at the time was also concerned with the preparation of the record on appeal—the court made no reference to them. The sentencing judge was obviously aware of the photographs before the trial even began, since he ordered their suppression. We think it unrealistic under these circumstances to speculate that their appearance in the courtroom at the time of sentencing had such an impact as to influence the judge's sentencing decision.

We now address Bynum's other contention, which focuses on the issue of using suppressed evidence for impeachment purposes. At trial Bynum's defense counsel sought an *advance* ruling from the court on the admissibility of the suppressed photographs for purposes of cross-examination should Bynum take the stand. The trial court ruled that, depending to some extent on precisely how Bynum testified on direct examination, the prosecutor might, under the authority of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971),[7] use the suppressed photographs to impeach the credibility of that direct testimony. Accordingly, Bynum did not take the stand. He now claims that the court's action was improper because it prevented him from presenting his own defense.

**6.** The trial court suppressed the photographs because they had been unlawfully seized.

**7.** In *Harris*, the Supreme Court said:

It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

    \*     \*     \*     \*     \*     \*

The colloquy between Bynum's counsel and the trial judge, interspersed with remarks by the prosecutor and the codefendant's attorney, consumes some 25 pages of transcript in the record. It reflects a commendably thorough effort by the judge and the attorneys to prepare for several possibilities, focusing particularly on two possible lines of testimony if Bynum took the stand. One such possible line, according to counsel, would have been for Bynum to "recount the incident and events of [the critical night] without any specific denials . . . ." The other possible line of testimony would be far more concise: asked on direct examination if he had in his possession (or owned) on the night in question a pistol, Bynum would answer "no," thereby directly denying the count in the indictment charging him with carrying a pistol without a license. Bynum's attorney asked the court if, under either hypothetical line of testimony, it would allow the government on cross-examination to impeach Bynum with the photographs, suppressed pretrial, which depicted him holding the distinctive pistol.

As to the first possibility, that Bynum might on direct examination "recount the incident and events . . . without any specific denials," the court stated:

What isn't . . . clear is what your client is going to say; what doors, if any, he is going to open which would give the Government the right to ask these questions.

I'm trying to be as candid as I can, but I'm not sure that I can say whether or not these photographs will be admitted other than to state these dry principles which I think we all know.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.

    \*     \*     \*     \*     \*     \*

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. [*Harris, supra* at 224–26, 91 S.Ct. at 645–646.]

If your client merely recounts the events—I'm not sure how you'd do it—talk about everything, but not talk about the gun? It is a little bit hard to visualize. [Record at 336.]

As to the second possibility, that Bynum might deny ownership or possession of the pistol on the night in question, the court stated:

Well, gentlemen, I think under Harris versus New York that if a defendant gets on the stand and testifies that the gun is not his, then these, or one or more of these photographs may, may very well be admissible for impeachment purposes. It would depend to some extent on what he says, and what doors, if any, he opens.

All I'm ruling this afternoon is: The mere fact that these photographs were suppressed by the Court, and the mere fact that the admission of these photographs would go to an element of the offense as [opposed] to a collateral matter, does not make them inadmissible.

So, I said they may, one or more of these may be admitted.

If one or more of these photographs is admitted, then the Court does have a duty to do what can be done to eradicate or dissipate any prejudice which may flow therefrom. [Record at 348–49.]

■ We are not persuaded that the court erred under these particular circumstances. In responding to the proffer that Bynum's direct testimony would constitute a general recounting of the critical events, the court certainly was correct in ruling that the use *vel non* of the suppressed photographs for impeachment would depend upon specifically what, in fact, Bynum said on the stand. Both court and counsel recognized that the prosecution could not, in its cross-examination of appellant, "set up" a denial by him of possession of the gun and then produce the photos to impeach him. *See Agnello v. United States*, 269 U.S. 20, 35, 46 S.Ct. 4, 7, 70 L.Ed. 145 (1925); *Ibn-Tamas v. United States*, D.C.App., 407 A.2d 626, 643 (1979). Considering the prospective nature of the ruling, the court could make no more specific ruling under the circumstances.[8]

■ As to the propriety of the court's ruling in regard to the second possibility—a concise, flat denial that he possessed or owned the gun on the night of the alleged crime—we likewise find no error. The Supreme Court has now made clear the general principle that evidence excluded from the prosecution's case because it was illegally obtained may nevertheless be used by the government for impeachment purposes. *United States v. Havens*, —— U.S. ——, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980);[9] *Oregon v. Hass*, 420 U.S. 714, 722–24, 95 S.Ct. 1215, 1220–21, 43 L.Ed.2d 570 (1975). *See also Harris v. New York, supra.* This court, in applying that general principle to a case of impeachment by prior inconsistent statements, has said:

We believe the Supreme Court has given a green light to the government's use of unlawfully obtained prior inconsistent statements for impeachment purposes, as long as the other constitutional standards and common law rules of evidence are met. [*Ibn-Tamas, supra* at 645–46.]

Just as the purpose of presenting prior inconsistent statements is to suggest to the factfinder that the witness should not be unquestioningly believed, so likewise the purpose of presenting the photographs in the present case would be to suggest that Bynum should be disbelieved in his denial that he possessed or owned a gun on the

---

8. We note that the trial judge apparently did not consider taking a different approach to Bynum's inquiries. He could have excused the jury and permitted counsel to examine Bynum along the lines indicated, and then made his ruling on the basis of that testimony. Had this been done, the issue we discuss here might have vanished from the case.

9. In *Havens*, the Court held:

that a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the Government, albeit by evidence that has been illegally obtained that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt. [*United States v. Havens, supra* —— U.S. at ——, 100 S.Ct. at 1912.]

night of the crime.[10] Therefore, particularly noting the prospective nature of the ruling that the trial court was called upon to make, we conclude that the court correctly applied the general principle to Bynum's proposed testimony.

*Affirmed.*

FERREN, J., concurs in the result.

**10.** We note that, despite appellant Bynum's assertions to the contrary, even the flat denial on direct examination that he owned or possessed a gun on the night of the crime would have opened the door to some cross-examination *possibly* leading to use of the photographs for impeachment. This is so because Bynum's denial would have occurred in the context of much other testimony that *someone* that night had a pistol with certain distinctive features. For Bynum, testifying in that context of all the other testimony, to deny possession or ownership of a pistol would make the photographs depicting him holding just such a distinctive pistol strong impeaching evidence bearing directly on the charge he was denying. The slim possibilities of doubt, as to precisely when the photographs were taken or whether the pistol depicted therein was the one used in the crime, would not significantly reduce the impeaching value of the photographs; they would still constitute a strong contradiction of his denial of having owned or possessed any gun on the night in question, when there was considerable testimony that just such a gun was used during the crime.