**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jamie Alberto GOMEZ–DIAZ,**
**Defendant-Appellant.**

No. 83–3048.

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 30, 1983.

**950**

Frank A. Silvestri, Asst. Fed. Public Defender, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Harry W. McSherry, Donald L. Foret, Robert T. Myers, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, and POLITZ, Circuit Judge, and SEAR *, District Judge.

CLARK, Chief Judge:

Jamie Alberto Gomez-Diaz asks this court to reverse his convictions of importation of cocaine and possession of cocaine with the intent to distribute that controlled substance. Gomez-Diaz charges that the district court erred in not suppressing evidence discovered through an illegal x-ray examination of his body. Finding that Gomez-Diaz consented to the search, we affirm.

Gomez-Diaz, a 30-year-old citizen of Colombia, arrived at New Orleans International Airport on September 22, 1982, on a flight from Cali, Colombia via Bogata and Mexico City. Inspector Nuccio, senior inspector of United States Customs at the airport, noticed Gomez-Diaz swapping lines and acting very nervous. After Gomez-Diaz made his customs declaration, Nuccio asked him to come to a secondary inspection area. Nuccio questioned Gomez-Diaz using an airline ticket agent as an interpreter because Gomez-Diaz spoke only Spanish. Gomez-Diaz answered several questions in contradictory fashion. He also met the drug courier profile; therefore, Chief Inspector Vaughan was alerted. Vaughan questioned Gomez-Diaz and determined that further investigation was necessary. Vaughan, speaking in Spanish, informed Gomez-Diaz that he wished to have a hospital conduct an x-ray examination to determine if Gomez-Diaz was carrying drugs within his body. Gomez-Diaz verbally agreed to the x-ray procedures, but refused to sign a written consent form, explaining that he wanted to reserve his right to sue the government in case he became ill from the examination.

After Vaughan consulted the regional counsel of the Customs Office, the inspectors took Gomez-Diaz to East Jefferson Hospital. While Gomez-Diaz offered no physical resistance to planned procedures, he again refused to sign a consent form offered by hospital personnel. He stated as before that he wished to retain his right to sue the government in case of injury. Vaughan signed the authorization forms. After hospital personnel questioned Gomez-Diaz about allergies, previous illnesses and past x-rays, they took approximately nine x-rays. The record contains no indication that Gomez-Diaz did not physically cooperate in the procedures. The examination disclosed foreign objects in Gomez-Diaz's abdomen. He was arrested and taken to the Orleans Parish Prison Medical Unit where he naturally passed sixty-nine balloons. Each balloon contained cocaine. The amount retrieved totaled 445 grams.

Gomez-Diaz moved to suppress the cocaine alleging that the government lacked sufficient cause to conduct the x-ray examination. During the hearing on the motion, Vaughan testified that Gomez-Diaz verbally consented to the x-ray examination. Gomez-Diaz's attorney attempted to have his client testify at the suppression hearing. However, the magistrate refused to limit examination to the yes/no question of whether Gomez-Diaz gave his consent. The magistrate explained that should Gomez-Diaz take the stand during the hearing, the

government would be allowed to cross-examine him about any matters relating to his alleged consent that occurred during the time he was detained for examination. As a result, Gomez-Diaz declined to testify at the hearing. The motion to suppress was denied and Gomez-Diaz was convicted on both charges. He was sentenced to nine years in jail with a concurrent five-year special parole term.

In his appeal, Gomez-Diaz contends that he did not consent to the search. Absent his consent, he argues that the government needed either a warrant to x-ray him or a clear indication that drugs were secreted in his body. Gomez-Diaz asserts that this clear indication test would require more than reasonable suspicion. In either case, he contends, the government did not have the requisite degree of reasonable suspicion or a clear indication of the hidden presence of the drugs. While Gomez-Diaz presents an interesting question of law, we need not decide it here since we find that he consented to the search.

■ Consent is an exception to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Baldwin,* 644 F.2d 381, 383 (5th Cir.1981). When consent is the justification for the search, the government bears the burden of demonstrating that it was freely and voluntarily given and was not simply an acquiescence to a claim of lawful authority. *United States v. Horton,* 488 F.2d 374, 380 (5th Cir.1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). Whether consent was given is a determination to be made from the totality of the circumstances. *United States v. Compton,* 704 F.2d 739, 741 (5th Cir.1983). The determination by the district court that consent was given is a factual finding and it will not be disturbed unless it is found to be clearly erroneous. *United States v. Pozos,* 697 F.2d 1238, 1243–44 (5th Cir.1983).

■ The magistrate found that Gomez-Diaz had verbally consented to the x-ray. The district court adopted the finding. Our review of the record convinces us that the finding was not clearly erroneous. Indeed, the sole, uncontradicted evidence before the district court was the testimony of Chief Inspector Vaughan who stated that Gomez-Diaz gave full oral consent. He testified that Gomez-Diaz refused to sign consent forms only because he wished to reserve his right to sue the government should any injury result. The circumstances also point to a finding of consent. When Inspector Vaughan explained to Gomez-Diaz in Spanish that they were going to the hospital to x-ray him, Gomez-Diaz agreed to go. He did not balk, nor did he protest. Upon arrival at the hospital, he again refused to sign a consent form stating his original reason, but he did not refuse to allow the x-ray. He cooperated with hospital technicians. He answered their questions and there is no proof that he refused to position his body for the x-rays. The record is replete with indications, both verbal and nonverbal, that Gomez-Diaz consented to the x-ray.

■ Gomez-Diaz now complains that the record would not be uncontradicted if the magistrate would have allowed him to testify. Gomez-Diaz sought to take the stand during the suppression hearing to answer the single question of whether he verbally agreed to the x-ray.[1] He maintains that he would have answered no. The magistrate, however, stated that if Gomez-Diaz took the stand, he would be open to cross-examination on any matter that occurred during his detention by customs officials which related to the issue of consent. Given that ruling, Gomez-Diaz chose not to testify. The magistrate ruled correctly. There is no federal right to limit the testimony of a witness on a preliminary matter to one single phase of an issue. The Federal Rules of Evidence provide that "[t]he accused does not, by testifying upon a pre-

---

1. A defendant at a suppression hearing may testify without fear that that testimony will be used against him at trial except for impeachment. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

liminary matter, subject himself to cross-examination as to other issues in the case." Fed.R.Evid. 104(d). The issue at this point in the case was whether Gomez-Diaz consented to the x-ray. The issue of consent goes beyond a single yes or no answer to the question of whether he verbally agreed to the x-ray.

The magistrate correctly interpreted Rule 104(d) to permit full cross-examination on the "preliminary matter" of consent if Gomez-Diaz chose to take the stand on that matter at the suppression hearing.

Gomez-Diaz argues that Louisiana law allows the type of limited testimony that he sought in this case. This appeal of a federal criminal conviction is not controlled by Louisiana law.

The convictions are

AFFIRMED.