**Christopher BOURN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 87–723.**

District of Columbia Court of Appeals.

Argued Oct. 17, 1989.
Decided Dec. 28, 1989.

The court did not expand on this reasoning in          its Supplementary Opinion and Order.

William Dansie, appointed by this court, for appellant.

Per A. Ramfjord, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty., at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and KERN, Senior Judge.

ROGERS, Chief Judge:

Appellant, Christopher Bourn, appeals from his conviction by a jury of possession with intent to distribute phencyclidine (PCP) and cannabis (marijuana), and possession of marijuana, D.C.Code § 33–541(a)(1) & (d) (1985 Supp.). Among his claims of error are (1) the use of his testimony at a suppression hearing to impeach him at trial; (2) the failure to strike the testimony of witnesses who allegedly violated the rule on witnesses; (3) the lack of adequate instructions of unanimity; and (4) the imposition of a separate sentence for possession of marijuana which is a lesser included offense of possession with intent to distribute marijuana. We hold that the trial court did not err in allowing appellant to be impeached at trial with his testimony on cross-examination at the suppression hearing. We find no abuse of discretion by the trial court in declining to strike witnesses' testimony and no plain instructional error regarding unanimity. However, we agree that appellant's conviction for possession of marijuana must be vacated. Accordingly, we affirm the judgment except to remand to the trial court with instructions to vacate the conviction for possession of marijuana.

I

On December 27, 1985, at approximately 4:00 p.m., while on non-uniformed patrol in an unmarked police cruiser in the 1300 block of C Street, S.E., an area known for PCP and marijuana trafficking, four police officers spotted a man, later identified as appellant, standing in an open breezeway next to an unidentified woman. Appellant was holding a plastic bag containing a number of small tinfoil envelopes similar to those customarily used to package PCP for sale, and passing something to the woman. Suspecting that a drug transaction was taking place, the officers got out of the car. As they approached, appellant ran out of the breezeway, shoving one officer aside as he ran. Another officer tackled him, and, with assistance, subdued appellant who attempted to swallow the plastic bag as he lay struggling in the street.

The plastic bag contained ten tinfoils, and three manila envelopes were found in appellant's jacket pocket. A search of the breezeway produced three additional tinfoils. The manila envelopes were later determined to contain marijuana and the contents of the tinfoils tested positive for PCP-laced marijuana.

An expert testified that the events were consistent with the distribution of drugs.

## II

Appellant contends that the trial judge committed reversible error in permitting the prosecutor over defense objection to impeach him at trial with his suppression hearing testimony. He maintains that his cross-examination testimony at the suppression hearing was improper because it exceeded the scope of his direct examination, and that the error was compounded when it was used in a highly prejudicial way to impeach him at trial. We disagree.

■ First, appellant's cross-examination at the suppression hearing about whether he had seen or sold PCP or marijuana did not exceed the scope of the direct testimony. *See United States v. Williams*, 754 F.2d 672, 676 (6th Cir.1985); *United States v. Gomez–Diaz*, 712 F.2d 949, 951–52 (5th Cir.), *cert. denied*, 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 191 (1984). Appellant testified on direct examination that he had been in the area for 20 years and was familiar with what went on in the area and denied ever selling or possessing narcotics at any time, including the day of his arrest. On cross-examination, he claimed that he could not recall having ever seen tinfoils of PCP or marijuana in the area and denied knowing what a tin of marijuana and PCP looked like.[1] These denials went directly to the issue at the suppression hearing of whether the police had probable cause to arrest him, and the prosecutor could properly try to show that the denials were false. *Williams, supra*, 754 F.2d at 676.

■ Second, to decide whether the use of appellant's suppression hearing testimony to impeach him at trial was highly prejudicial because appellant alleges it urged guilt by association, we first must decide the question reserved by the Supreme Court in *United States v. Salvucci*, 448 U.S. 83, 94, 100 S.Ct. at 2547, 2554, 65 L.Ed.2d 619 (1980). Then Justice Rehnquist, speaking for the Court, framed the issue of whether a defendant's testimony from a suppression hearing can be used to

impeach him at a later trial as a question of extending the "*Simmons* privilege". *Id.* at 94, 100 S.Ct. 2554 (referring to *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). In *Simmons* the prosecutor introduced a suitcase containing incriminating items recovered from the house of the mother of one co-defendant. To establish his standing to suppress the evidence, the defendant testified at a pretrial suppression hearing that, although he could not identify the suitcase with certainty, it was similar to one he had owned and that he was the owner of clothing found inside the suitcase. 390 U.S. at 380–81, 88 S.Ct. at 969–70. At trial, the prosecutor used this testimony to prove guilt. *Id.* at 389, 88 S.Ct. at 973. The Court viewed as "intolerable" the dilemma where a defendant is "obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination," and held that when a defendant testified in support of a motion to suppress on Fourth Amendment grounds, his testimony may not be admitted against him at trial on the issue of guilt. *Id.* at 394, 88 S.Ct. at 976.

Clearly, the possibility that a defendant's prior testimony may be admitted at trial, for whatever purpose, is likely to have some deterrent effect on a defendant who contemplates asserting a Fourth Amendment right. However, the Supreme Court has repeatedly held that an impermissible burdening of rights is not shown by a mere finding that a choice imposed upon the defendant may have a "discouraging effect on the defendant's assertion of his trial rights." *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973) (prospect of a higher sentence on retrial does not impermissibly discourage defendant's assertion of right to appeal). Rather, a balancing of interests is required in light of the purpose of the *Simmons* rule between the benefits to society at large and the detriment to the individual

---

1. Defense counsel objected to the relevance of this question. The trial judge ruled that the defense had opened the door, and we find no error by the trial judge in light of appellant's admitted association with the area and his broad denials on direct examination. *See Morris v. United States*, 469 A.2d 432, 435 (D.C. 1983).

defendant. *See United States v. Havens*, 446 U.S. 620, 626–28, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980);[2] *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971); *Corbitt v. New Jersey*, 439 U.S. 212, 218–22 & nn. 8 & 9, 99 S.Ct. 492, 497–99 & nn. 8 & 9, 58 L.Ed.2d 466 (1978). Thus, the question is whether admitting at trial a defendant's prior inconsistent testimony at a suppression hearing on the issue of credibility presents a burden on a defendant's rights that is analogous to the "intolerable" dilemma held impermissible in *Simmons* or is outweighed by the need for proper and effective cross-examination and truth-testing evidence at trial.[3]

Under the trial judge's ruling, appellant could assert his Fourth Amendment right only by assuming the risk that his testimony would later be used to impeach him at trial. Consequently, his burden is that which a defendant choosing to raise a Fourth Amendment claim bears in being obliged to testify consistently or face the consequences of impeachment at trial. The question becomes whether, by admitting prior testimony from a suppression hearing as impeachment evidence at trial, the resulting benefits to society, measured in terms of testing the trustworthiness of defendant's trial testimony, outweigh the discouraging effects on a defendant's assertion of his Fourth Amendment rights and his right to testify at trial.

The Supreme Court has determined in various contexts that the right to testify at trial cannot be construed to include the right to commit perjury. *See Nix v. White-*side, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (counsel's threat to inform court and to seek to withdraw if client-defendant lied on witness stand did not violate sixth amendment right to effective assistance of counsel); *Havens, supra,* 446 U.S. at 628–29, 100 S.Ct. at 1917–18 (prosecutor may use illegally seized evidence to impeach defendant's perjurious trial testimony if reasonably related to defendant's direct testimony at trial); *Harris, supra,* 401 U.S. at 225, 91 S.Ct. at 645 (otherwise inadmissible evidence may be used as impeachment as long as that testimony was in response to questions "plainly within the scope of the defendant's direct examination"); *cf. Witherspoon v. United States,* 557 A.2d 587, 596, n. 6 (D.C.1989) (Ferren, J., concurring). The Court's rationale is simply that the fact-finder's need to hear evidence of a defendant's untrustworthiness outweighs the protections and policy concerns underlying the Fourth Amendment's exclusionary sanctions. *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); *Harris, supra,* 401 U.S. at 225, 91 S.Ct. at 645; *Havens, supra,* 446 U.S. at 628–29, 100 S.Ct. at 1916; *Ibn–Tamas, supra* note 3, 407 A.2d at 645–46. The Court has rejected "the notion that the defendant's constitutional shield against having illegally seized evidence used against him could be 'perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.'" *Havens, supra,* 446 U.S. at 626, 100 S.Ct. at 1916 (quoting *Harris, supra,* 401 U.S. at 226, 91 S.Ct. at 646).[4]

---

2. Appellant relies principally on *Havens* to claim that his impeachment with the suppression testimony was improper. In *Havens* the defendant did not make a statement during his direct testimony that reasonably could have been impeached by the suppressed evidence. Only when forced to testify about that evidence on cross-examination did he offer an impeachable statement. *Havens, supra,* 446 U.S. at 623, 100 S.Ct. at 1914. Appellant's reliance on *Havens* is misplaced since his impeachment arose out of his direct examination testimony at trial, and the prior inconsistent statement arose out of proper cross-examination at the suppression hearing.

3. Appellant erroneously characterizes the issue on appeal as a situation in which the prosecutor

"set up" the defendant on cross-examination to be impeached, analogizing what occurred in *Wright v. United States,* 418 A.2d 146 (D.C.1980). To the contrary, in the instant case, at trial defense counsel asked the question on direct examination of appellant which led to the government's introduction of the prior inconsistent testimony. *See United States v. Havens, supra,* 446 U.S. at 625–26, 100 S.Ct. at 1915–16; *Ibn–Tamas v. United States,* 407 A.2d 626, 643 (D.C.1979).

4. While recognizing that a major purpose of the exclusionary rule for illegally seized evidence is to deter the police from exercising unconstitutional practices, the Court has determined that the additional deterrence to be gained from

As Justice Frankfurter wrote for the Court in *Walder,* while a defendant on direct examination "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it ...," this "is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 65, 74 S.Ct. at 356.

The United States Court of Appeals for the District of Columbia Circuit has also viewed suppression hearing testimony as proper impeachment material of the defendant at trial. *Woody v. United States,* 126 U.S.App.D.C. 353, 354–55 & n. 3, 379 F.2d 130, 131–32 & n. 3 (1967) (relevant to fact finder's determination of defendant's credibility in non-jury trial) (citing *Jones v. United States,* 362 U.S. 257, 261–62, 80 S.Ct. 725, 731–32, 4 L.Ed.2d 697 (1960)). Although the court also has held that a defendant who testifies on the voluntariness of his confession at a suppression hearing does not waive his Fifth Amendment privilege against self-incrimination, *Bailey v. United States,* 128 U.S.App.D.C. 354, 360, 389 F.2d 305, 311 (1967), the restriction on the use of suppression hearing evidence prohibits its use at trial only to prove guilt. *Id.* ("We think the implications and logic of *Jones* require that the testimony of the defendant taken at the suppression hearing, although admissible for impeachment, cannot be used affirmatively against him at trial."). Both of these decisions relied on *Jones,* however, which was overruled by *Salvucci,* 448 U.S. at 93, 100 S.Ct. at 2553. Since *Salvucci,* other

courts have reached the same conclusion. *See Williams, supra,* 754 F.2d at 676; *United States v. Quesada–Rosadal,* 685 F.2d 1281, 1282–83 (11th Cir.1982); *Guenther v. Holmgreen,* 738 F.2d 879, 886 n. 7 (7th Cir.1984) (dictum); *United States v. Gomez–Diaz, supra,* 712 F.2d at 951 n. 1 (dictum); *United States v. Tariq,* 521 F.Supp. 773, 783 n. 22 (D.Md.1981) (dictum). Moreover, the rationale of the U.S. Court of Appeals for the D.C. Circuit remains persuasive. *See Woody, supra,* 126 U.S. App.D.C. at 355, 379 F.2d at 132.

Appellant faced no "intolerable" *Simmons* dilemma here. At trial he admitted knowing what PCP and marihuana looked like. On cross-examination, the prosecutor impeached him with his prior suppression hearing testimony denying knowledge of what they looked like. Having taken the witness stand, appellant was obliged to testify truthfully or face the consequences, and he cannot complain when his suppression testimony was used, not as direct evidence of guilt, but to impeach his trial testimony. *See Harris, supra,* 401 U.S. at 226–27, 91 S.Ct. at 646–47; *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969); *United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). Where the impeachment is designed to correct contradictory statements in the defendant's direct testimony at trial, the burden on a defendant's right to testify at trial, as a result of the likely possibility that prior inconsistent testimony from a suppression hearing will be introduced as impeachment at trial, is outweighed by the necessity of probing the trustworthiness of evidence at trial.[5] Accordingly, we hold

---

excluding this evidence on the issue of defendant's credibility was outweighed by the need for truth-seeking evidence at trial. *Harris, supra,* 401 U.S. at 225, 91 S.Ct. at 1915. *See also Havens, supra,* where the Court viewed the deterrent effect of the exclusionary rule as adequately protected by prohibiting the government from using the illegally seized evidence in its case-in-chief to prove guilt. 446 U.S. at 628–29, 100 S.Ct. at 1917–18.

5. Although juries who hear impeachment evidence may sometimes be disinclined or unable to disregard the evidence's probative value as to guilt, and evidence inadmissible under *Sim-*

*mons* may thereby be improperly considered by the jury, *see, e.g., Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), this is not a concern here. The suppression testimony admitted at trial was not highly probative of appellant's guilt or innocence (and thus not highly prejudicial), and appellant retained the choice whether or not to take the stand and thus the ultimate power to prevent the prior testimony from being admitted. *Cf. Neely v. Israel,* 715 F.2d 1261, 1265 (7th Cir.1983) (any prejudice resulting from cross-examination is attributable

the trial judge did not err in permitting appellant to be impeached at trial with his testimony during cross-examination at the suppression hearing. Further, appellant's trial testimony on direct examination that he was familiar with the appearance of PCP and marijuana and with the neighborhood, linking him to a high drug area, renders meritless his contention that the impeachment improperly linked him to a high drug area and resulted in his conviction by association, and, in any event, the evidentiary value of the prior inconsistent testimony was slight and clearly cumulative.[6] *See Ibn–Tamas, supra,* 407 A.2d at 646; *Rhodes v. United States,* 354 A.2d 863, 866–67 (D.C.1976); *Moreno v. United States,* 482 A.2d 1233, 1238 (D.C.1984).

### III

Appellant further contends that the trial judge abused her discretion in failing to strike testimony of the police officers who allegedly violated the trial court's rule on witnesses.[7] The trial court has broad discretion in determining the appropriate remedy for alleged violations and we find no abuse of discretion. *Nowlin v. United States,* 382 A.2d 9, 12 (D.C.1978); *see Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976).

■ The rule on witnesses generally prohibits witnesses from discussing their actual or prospective testimony, 6 WIG-MORE, *Evidence* § 1838 (Chadbourn rev. 1976), and thereby " 'tailoring (it) to that of earlier witnesses'." *Brown v. United States,* 388 A.2d 451, 456 (D.C.1978) (quoting *Geders, supra,* 425 U.S. at 85, 96 S.Ct. at 1344). These objectives may be served by remedies which are less severe than striking a witness' testimony, (such as commenting to the jury on the witness' conduct, citing the witness for contempt, and

allowing opposing counsel to cross-examine the witness on the nature of the violation), and thus, courts will rarely reverse a conviction for violation of the rule on witnesses. *See Brown, supra,* 388 A.2d at 456 (violation must be so egregious as to render testimony incredible as a matter of law); *Holder v. United States,* 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); *United States v. Blasco,* 702 F.2d 1315, 1327 (11th Cir.1983). This court will reverse the failure to strike a witness' testimony only where the violation "was with the connivance or knowledge of the party or his counsel." *Brown, supra,* 288 A.2d at 456 (quoting *Jett v. Jett,* 221 A.2d 925, 927 (D.C.1966)).

■ During a break in the testimony of Officer Wallace at the suppression hearing, between his direct and cross-examination, the trial judge, in response to defense counsel's request, warned the officer to comply with the rule on witnesses. Nevertheless Wallace informed other officers that the police property book entry did not show that any money was seized from appellant. Although appellant has not demonstrated that a rule on witnesses was imposed at trial, and the transcript of the suppression hearing suggests that the rule was requested and granted only for the time between Officer Wallace's direct and cross-examination at the suppression hearing, assuming a rule on witnesses at trial, there is no evidence that Wallace attempted to alter either his own testimony or that of the other officers. Defense counsel had ample opportunity to cross-examine each witness on the nature and scope of the rule violation, and the minor factual inconsistencies in the officers' testimony suggests the absence of any collusion. *Cf. United States v. Arruda,* 715 F.2d 671, 684 (1st Cir.1983).

Further, had the officers conformed their testimony, the prejudicial effect would

---

to defendant's decision to testify and does not deprive him of a fair trial).

**6.** Appellant's trial testimony was filled with contradiction, inconsistency and evasion. For example, his recollection of the events of his arrest was unclear. Further, his testimony was indirectly impeached by the testimony of four police officers.

**7.** Appellant is mistaken that the trial judge abused her discretion by failing to respond to a motion for mistrial on these same grounds. The judge specifically denied appellant's motion for a mistrial.

seem minor since evidence of large sums of money rather than no money is probative of guilt on a charge of possession with intent to distribute a controlled substance.[8] Consequently, assuming the government gained a benefit from the conformed testimony, it was negated by the broad cross-examination of the witnesses. *Brown, supra,* 388 A.2d at 456–57; *United States v. Buchanan,* 787 F.2d 477, 485 (10th Cir. 1986); *United States v. Arruda, supra,* 715 F.2d at 684; *United States v. Prichard,* 781 F.2d 179, 183 (10th Cir.1986); *see also In re D.S.A.,* 283 A.2d 829, 831 (D.C. 1971). On cross-examination, the jury heard such discrepancies as there were between the testimony of the officers and there is testimony that none of the officers had an independent recollection of whether or not money had been seized from appellant at the time of his arrest. Accordingly, appellant has failed to establish that a violation of the rule on witnesses took place, let alone that the witness committed such an offense with the requisite level of knowledge or connivance.[9]

## IV

Appellant also contends that plain error occurred because the trial judge failed to instruct the jury that there must be unanimity as to a finding of marijuana in the tinfoil packets recovered from petitioner's or unanimity as to a finding of marijuana in the tinfoil packets recovered from the breezeway or unanimity as to both, relying on *Hack v. United States,* 445 A.2d 634, 641 (D.C.1982). The judge instructed the jury that its verdict must be

unanimous and gave specific unanimity instructions as between the marijuana in the tinfoil packets and the marijuana in the manila envelopes. Since the tinfoils recovered from appellant's hand and from the breezeway are evidence of a continuing course of conduct, rather than separate incidents, *Gray v. United States,* 544 A.2d 1255, 1258 (D.C.1988), no special unanimity instruction is necessary. Appellant did not raise separate defenses and there was testimony that all of the packets were initially in his hands. Moreover, even had the spatial separation of the two sets of tinfoils warranted special unanimity instructions, there was no plain error, much less non-harmless error, *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), since the contents of the tinfoils recovered from the breezeway and appellant's hand contained marijuana laced with PCP. *Hack, supra,* 445 A.2d at 641;[10] *Shivers v. United States,* 533 A.2d 258, 263 (D.C.1987); *Scarborough v. United States,* 522 A.2d 869, 873 (D.C.1987) (en banc); Super.Ct.Crim.R. 31(a).

## V

The government concedes on appeal, and we agree, that appellant's conviction for possession of marijuana merged as a lesser included offense in his conviction for possession with intent to distribute marijuana. *See Brown v. United States,* 542 A.2d 1231 (D.C.1988); *Briscoe v. United States,* 528 A.2d 1243 (D.C.1987). Accordingly, we remand the case to the trial

---

8. Appellant testified he had $219 at the time of his arrest and that it was seized by the police.

9. Appellant contends plain error occurred when the voir dire of the officers occurred in the jury's presence, relying on *Smith v. United States,* 414 A.2d 1189 (D.C.1980) (trial court abused discretion in allowing prosecutor but not defense counsel opportunity to examine witness during voir dire in jury's presence). The selection of the method of examination on voir dire is within the sound discretion of the trial judge, *id.* at 1197–98, and we find no abuse in view of the broad cross-examination of the witness by appellant.

10. Appellant's reliance on *Hack, supra,* is misplaced. In *Hack,* the defendant was linked to "two separate samples of marijuana: that in the yellow bag which was treated with PCP and that found in the transport car in which (defendant) rode after being arrested." 445 A.2d at 641. The tinfoils recovered in the present case were neither legally or factually separate incidents.

Likewise, in *Brown v. United States,* 542 A.2d 1231 (D.C.1988), the defendant asserted two separate legal defenses to the two quantities of drugs with which defendant was charged with possession. Appellant did not assert separate or distinct defenses in respect to the two sets of tinfoils, but simply denied any connection with drugs on the day of his arrest.

court with instructions to vacate the conviction for possession of marijuana.[11]

*Affirmed in part and remanded with instructions.*

---

**11.** Appellant's other claims are meritless. His argument that the government failed to establish a complete chain of custody for the drugs is based, the government maintains, on an error in the original trial transcript. In the absence of a certification under D.C.App.R. 10(d), we consider the uncorrected transcript, and upon doing so, conclude that the government met its burden of proof. Officer Mitchell testified that he put all the evidence in a lockseal envelope and the thirteen packets were found therein. Since there was no gap in the chain of custody, appellant's claim of prejudice from Officer Kearney's testimony that the tinfoils recovered from the breezeway resembled packets typically used to package PCP also fails, and the trial judge did not err in denying appellant's motion for acquittal on the ground that there was insufficient evidence that the tinfoils contained controlled substances.

Nor do we find any error, much less plain error, by the trial judge as a result of her comment regarding a possible stipulation between the parties. The record does not support appellant's claim that the trial judge refused to allow the stipulation to be made. Rather the judge opined that the proposed stipulation might be improper because damaging to defense and de-

fense counsel responded, "Very well, Your Honor. We will not stipulate to anything." *See Pitts v. United States,* 95 A.2d 588, 590 (D.C.1953). In any event, there was no prejudice to appellant since none of the evidence which he claims was prejudicial was any more prejudicial than the stipulation would have been.

Appellant's claims of plain error based on prosecutorial misconduct are also meritless. *United States v. Shelton,* 202 U.S.App.D.C. 54, 628 F.2d 54 (1980). The prosecutor's question to appellant about whether gambling was his hobby was proper cross-examination since appellant had so testified on direct examination and claimed he was on the scene to participate in a "minor crap game". The prosecutor's reference to four, rather than two, police officers seeing appellant passing tinfoils of PCP to an unidentified women, appears no more than an unintentional misstatement and not a deliberate attempt to inflate the case, *see King v. United States,* 125 U.S.App.D.C. 318, 330, 372 F.2d 383, 395 (1967). *See also McCowan v. United States,* 458 A.2d 1191, 1196–97 (D.C.1983) (citing *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (*en banc*)). *See Parks v. United States,* 451 A.2d 591 (D.C.1982).