**Theodore WARE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 88–526.**

District of Columbia Court of Appeals.

Argued Feb. 15, 1990.

Decided Aug. 22, 1990.

Steven Weinberg, appointed by this court, for appellant.

George J. Lane, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the briefs, for appellee.

Before NEWMAN, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellant was convicted by a jury of unlawful distribution of Dilaudid and unlawful possession with intent to distribute Dilaudid in violation of D.C.Code § 33–541(a)(1) (1988). Appellant's principal contention is that the trial court erred in

mistrial, that the judge interrogate the alternate    on the subject matter of the discussion.

permitting the government to impeach him with evidence inadmissible in the government's case-in-chief because it was obtained in violation of the fourth amendment. We affirm.[1]

## I

### A

Appellant was arrested after a drug transaction. The incident began when appellant's accomplice, Christopher Beckwith, approached an undercover police officer, the passenger in an unmarked police vehicle. Beckwith asked the officer, "How many do you want?" "One," the officer replied. Beckwith walked twenty or thirty feet to where appellant was standing, and the two talked for ten to fifteen seconds. At that point, the officer saw appellant put something into Beckwith's hand; Beckwith then returned to the undercover agent, opened the same hand, and displayed a tablet later identified to be Dilaudid. In exchange for the tablet, the officer gave Beckwith $40.00 in prerecorded currency. Beckwith then walked away.

As the undercover officer's vehicle pulled away from the curb, appellant and his accomplice were seized by other officers. The undercover officer had not yet left the vicinity when appellant was stopped; he observed appellant's seizure and immediately radioed a positive identification to the arrest team. Appellant was then formally placed under arrest and searched. Only about ten seconds elapsed between the time of the transaction and the time when appellant was stopped. Throughout the entire transaction, appellant was under observation not only by the undercover officer but also by two other members of the arrest team who testified at trial. Police recovered just over $100.00 in currency from appellant; the serial numbers of bills totaling $30.00 matched those of the prerecorded bills used in the transaction.[2] During a more thorough search at the police station, police recovered from appellant's underwear a small ziplock bag containing three pills later identified as Dilaudid.

The police officers who participated in appellant's arrest seized from appellant the key to a rental car. They located the car and, in an assumed violation of the fourth amendment,[3] opened the door and searched the car's interior. During this search, the police recovered seventeen yellow Dilaudid pills like the one sold to the undercover officer.[4]

### B

In the defense case, appellant took the stand and, on direct examination, denied any involvement in the transaction leading to his encounter with Beckwith. He testified that at the time of his arrest, he had just departed from the home of the mother of a friend of his and was on his way to the

1. Appellant's other allegations of error do not merit relief. Appellant first contends that the prosecutor improperly paired questions about appellant's denial of guilt in this case with questions about his prior convictions of *unrelated* offenses in violation of *Dorman v. United States,* 491 A.2d 455 (D.C.1984) (en banc). There was no objection to the sequence of questions and answers. Error, if any, did not "jeopardize the very fairness and integrity of the trial." *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).

Appellant also claims that the evidence was insufficient to support a finding that his intent was to distribute the three tablets found in his underwear. Given the evidence of appellant's involvement in at least one transaction involving Dilaudid, the evidence was sufficient for a reasonable juror to conclude that appellant possessed the other three tablets with intent to distribute them. *Cf. Bernard v. United States,* 575 A.2d 1191, 1194 (D.C.1990) (evidence of possession of marijuana and evidence of sales of unidentified substance sufficient to support conviction for distribution of marijuana).

2. Police recovered the remaining $10.00 of prerecorded currency, in the form of a single ten-dollar bill, from Beckwith.

3. For purposes of this appeal, the government assumes without conceding that the evidence recovered from appellant's car was illegally *seized in violation of the fourth amendment and* hence inadmissible in the government's case-in-chief.

4. Upon opening the door the police found a wallet containing appellant's driver's license. They also found $500.00 in the glove compartment. The seventeen Dilaudid tablets themselves were inside a small magnetic key box in the car's ashtray.

nearby spot where he had parked his car. While walking, he encountered a woman he knew from the neighborhood; the two continued walking together. Soon after, they were joined by a man, later identified as Beckwith, who sought to strike up a conversation with the woman. Appellant testified that he did not know Beckwith, did not talk with him, and did not hand him any drugs or anything else.

During his direct examination testimony, appellant testified that he was "positive" that he did not have any drugs with him at the time of his encounter with Beckwith. He also denied that he had any drugs on his person when searched at the station, asserting that a police officer picked the bag containing three Dilaudid tablets off the floor. Appellant sought to characterize as implausible the government's allegation that a Dilaudid sale had taken place between strangers in the open. Based on a "knowledge of how drugs are sold on the streets" he had acquired through "seeing a lot of arrests and things of that nature," appellant testified that the government's evidence was not consistent with drug sales he had seen. "People on the street are a little more discrete than the way they blowed it up to be." At the conclusion of his direct testimony, appellant issued a broad assertion of innocence, denying that he sold or was "involved in the sale of any drugs with anybody else on that day." [5]

On cross-examination, the prosecutor sought permission to cross-examine appellant about the presence in his car of the seventeen Dilaudid tablets. The trial court decided to permit that line of cross-examination in light of appellant's denial of defense counsel's "broad questions whether he had any drugs on him." When asked if his car had seventeen Dilaudid tablets in it at the time of his arrest, appellant responded that it did not. Appellant's subsequent cross-examination statements also expanded on his direct testimony about his source of knowledge of drug transactions; he testified that he knew of drug trafficking only

through "observations" and "conversation," denied that any such knowledge stemmed from his own experience in dealing drugs, and categorically denied that he had ever sold drugs in the District of Columbia. Additionally, appellant professed unfamiliarity with the drug Dilaudid; when asked whether he had ever seen a Dilaudid pill before, he replied, "I wouldn't know if I saw Dilaudid pills or not. I didn't know the name. I never heard of no Dilaudid up till this case."

In rebuttal, the government offered the testimony of the police officer who searched appellant's car; he testified about his discovery of seventeen Dilaudid pills in appellant's car. The Dilaudid pills were entered into evidence over appellant's objection.

## II

Appellant challenges the government's introduction, in rebuttal, of evidence of the seventeen Dilaudid tablets recovered from his car. It is well settled, of course, that the right to testify "cannot be construed to include the right to commit perjury." *Bourn v. United States*, 567 A.2d 1312, 1315 (D.C.1989). *See Nix v. Whiteside*, 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123 (1986) ("[w]hatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*" (emphasis in original)). Having voluntarily taken the stand, appellant was under an obligation to "testify truthfully or suffer the consequences," *United States v. Havens*, 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980); the right to have illegally seized evidence excluded from the government's case-in-chief cannot serve as "a justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Bourn, supra*, 567 A.2d at 1316 (quoting *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct.

---

**5.** Appellant's direct testimony concluded with the following exchange:

Q: Did you sell any pills or were you involved in the sale of any drugs with anybody else on that day?
A: No, sir.

354, 356, 98 L.Ed. 503 (1954)). Particularly relevant to the case before us is the opinion in *United States v. Havens, supra,* 446 U.S. 620, 100 S.Ct. 1912 where the Supreme Court declared:

> We ... hold that a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.

*Id.* at 627–28, 100 S.Ct. at 1916–17.[6]

■■■ Appellant does not take issue with the general principles outlined above. He contends, however, that his direct testimony did not "reasonably suggest" the questions asked by the prosecutor on cross-examination. We cannot agree. It is true, of course, that the prosecutor may not " 'set up' the defendant on cross-examination to be impeached." *Bourn, supra,* 567 A.2d at 1315 n. 3. Here, however, it was defense counsel who broadened the scope of inquiry by asking appellant: "Did you sell any pills or were you involved in the sale of *any drugs* with *anybody else* on that day?" (Emphasis added). Appellant's negative response to that question, in our view, reasonably suggested questions about the presence of the seventeen Dilaudid tablets in the car, particularly in the context of appellant's other direct testimony and earlier expert testimony that in drug sales, the person who controls the

drugs may store them in a "stash" or hiding place, rather than keeping them on his or her person. *See Bourn, supra,* 567 A.2d at 1314 n. 1 (trial court did not err in concluding that defendant's "broad denials" on direct examination "opened the door" to impeachment with suppression hearing testimony).

The illegally seized Dilaudid tablets also impeached other answers to proper cross-examination questions reasonably suggested by appellant's direct testimony. Specifically, appellant's direct testimony about his observations of drug sale practices reasonably suggested cross-examination about whether appellant had ever seen Dilaudid tablets. Thus, the Dilaudid tables introduced in rebuttal also served as proper "impeachment by 'contradiction' " of appellant's statements that he had never seen or heard of Dilaudid. *See generally* E. CLEARY, McCORMICK ON EVIDENCE § 47 (3d ed. 1984).[7]

Because we cannot conclude that the cross-examination in this case was not "reasonably suggested by the defendant's direct examination," *Havens, supra,* 446 U.S. at 627, 100 S.Ct. at 1916, we find no reversible error in the trial court's decision to allow impeachment of appellant's cross-examination testimony with the Dilaudid tablets recovered from his car.

*Affirmed.*

NEWMAN, Associate Judge, dissenting:

I cannot agree with the majority that Ware's denial of drug sales to Officer

---

**6.** Elsewhere in *Havens,* the Court uses various phraseology in describing how closely related to direct testimony a cross-examination question must be before the defendant's answer to the question subjects him to the risk of impeachment with illegally seized evidence. *See Havens, supra,* 446 U.S. at 621, 628, 100 S.Ct. at 1913, 1917 (impeachment permissible if testimony is given in response to "proper cross-examination"); *id.* at 626, 100 S.Ct. at 1916 (impeachment permissible if cross-examination questions "would have been suggested to a reasonably competent cross-examiner"); *id.* at 627, 100 S.Ct. at 1916 (impeachment permissible for answers to "questions put to [the defendant] on cross-examination that are plainly within the scope of the defendant's direct examination"); *id.* at 628, 100 S.Ct. at 1917 (impeachment per-

missible for testimony on "cross-examination growing out of [defendant's] direct testimony"). *See also James v. Illinois,* —— U.S. ——, 110 S.Ct. 648, 652, 107 L.Ed.2d 676 (1990). We quote in the text the formulation set forth in the direct holding of *Havens.*

**7.** Although it is true that the prosecutor asked whether appellant's familiarity with drug selling methods was a product of his own involvement in drug dealing and whether appellant had previously seen Dilaudid tablets only after asking about the presence of the seventeen tablets in appellant's car, the actual impeachment with illegally seized evidence did not occur until rebuttal, after the completion of appellant's cross-examination.

Beckwith or anyone else on the day of his arrest "reasonably suggested" the government's questions concerning the Dilaudid tablets found in his car.

The majority holds that it was permissible for the government to introduce otherwise inadmissible evidence that Dilaudid tablets were found in Ware's car and bases its holding upon Ware's testimony denying his involvement with the sale of drugs on the day of his arrest. In my view this holding misapplies the *Havens* rule.

As the majority points out, Ware testified as follows:

Q. Did you sell any pills or were you involved in the sale of any drugs with anybody else on that day?

A. No, Sir.

In the majority's view, Ware's "negative response to that question ... reasonably suggested questions about the presence of the seventeen Dilaudid tablets in the car." *Supra* at 703. I disagree.

As I read the direct examination testimony relied upon by the majority, Ware was responding to a question about drug sales and about drug sales only. Having denied involvement in any drug sales that day, Ware opened the door to impeachment by way of any evidence in the government's possession tending to show the opposite. *Havens v. United States,* 446 U.S. 620, 627–28, 100 S.Ct. 1912, 1916–17, 64 L.Ed.2d 559 (1980). However, that is not what the majority approves today. Instead, the majority approves the introduction of evidence showing Ware's *possession* of Dilaudid tablets. In my view, admission of this evidence exceeds the *Havens* rule.

Structurally, there are striking similarities between this case and *Havens;* thus, a comparison of the two is enlightening. First, both men were charged with a possessory offense along with another substantive offense. In Ware's case, it was distribution of Dilaudid. In Havens's case, it was importing and conspiring to import cocaine. Second, both men took the stand to deny participation or involvement in the non-possessory offense. Third, in both cases the government was permitted to introduce evidence to rebut the denial. How-

ever, when one looks closely at the type of evidence approved for impeachment purposes, the similarity between them abruptly ends.

On direct, Havens was asked whether he had had anything to do with his alleged accomplice's smuggling operation, which had involved taping or wrapping cocaine around his body and the use of make-shift inner pockets made from patches cut from a T-shirt. Havens denied having anything to do with these operations. On cross, he was again asked about these operations, particularly the use of the make-shift pockets. Again Havens denied involvement. The government was then permitted to introduce evidence of his involvement with the preparation of the make-shift pockets to rebut his denial of such activity. The government was not, as the majority holds today, permitted to introduce evidence of Haven's possession of cocaine to rebut his denial of engaging in smuggling.

Thus, in my view, *Havens* does not authorize anything more than the introduction of otherwise inadmissible evidence of a charge denied by the defendant, *i.e.,* Havens denied the charge that he had participated in smuggling; the government was permitted to introduce evidence that he had participated in smuggling. *Havens* does not authorize what the majority permits today: the introduction of otherwise inadmissible evidence on a charge not denied by the defendant, *i.e.,* Ware denied the charge that he had sold drugs to anyone on the day of his arrest; the majority permits the government to introduce evidence that he possessed Dilaudid tablets on the day of his arrest.

This misapplication of the *Havens* rule is made even more egregious, in my view, by the manner in which the jury was invited to use it. The jury had before it Ware's denial that he had sold Dilaudid on that day and the government's evidence that he had Dilaudid tablets in his car. However, between mere possession and distribution lies possession with intent to distribute. Thus, in order for the jury to view Ware's possession as negating his denial of distribution, they also would have had to infer that his

possession was possession with intent to distribute. In short, the jury was being asked to draw a double inference from Ware's possession of the pills: first, that he possessed them with intent to distribute; second, that he did in fact sell them on that day. What a long way the majority has strayed from the way the evidence was used in *Havens!*

As I read *Havens,* the purpose of permitting the government to use otherwise inadmissible evidence to rebut a defendant's testimony is to counter the defendant's attempts to commit perjury and to preserve the truth-seeking process of the criminal trial. As the Court put it:

> "[F]orbidding the Government to impeach the [defendant's] answers to these questions by using contrary and reliable evidence in its possession fails to take account of our cases, particularly *Harris* [*v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)] and [*Oregon v.*] *Hass* [420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)]. In both cases, the Court stressed the importance of arriving at the truth in criminal trials, as well as the defendant's obligation to speak the truth in response to proper questions.

446 U.S. at 626, 100 S.Ct. at 1916. Thus, although *Havens* creates an exception to the exclusionary rule, it is a narrow exception created for the purpose of preventing perjury and safe-guarding the truth-seeking process of the criminal trial. In applying that exception, we must, in my view, remain faithful to both the letter and spirit of that purpose or risk undermining the exclusionary rule. Since, in my view, the majority does not do so, I dissent.